UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Southern Division

|  |  |
|---|---|
| ANDREW HAWKINS, AMBER CHAVEZ, and DOREEN ENDRESS, on behalf of themselves an all others similarly situated,<br>　　　Plaintiffs,<br><br>　　vs.<br><br>FLAGSTAR BANK,<br><br>　　　　Defendant. | Civil No.<br><br><br><br><br><br>CLASS ACTION<br><br>**Demand For Jury Trial** |

_____/

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
111 S. Main Street, 3rd Flr
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Daniel C. Girard
Jordan Elias
Adam E. Polk
Simon Grille
GIRARD SHARP LLP
601 California St, Ste 1400
San Francisco, CA  94108
Phone: (415) 981-4800
dgirard@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com
sgrille@girardsharp.com

*Attorneys for Plaintiffs*

_____/

# COMPLAINT

Plaintiffs Andrew Hawkins, Amber Chavez, and Doreen Endress

("Plaintiffs"), individually and on behalf of the proposed class and subclass

defined below, bring this action against Defendant Flagstar Bank ("Flagstar"), and allege as follows:

## I.   <u>SUMMARY OF THE ACTION</u>

1.      This action stems from Flagstar's failure to secure the sensitive personal information of its customers and employees. Flagstar uses Accellion, a cloud solutions company, to collect and transfer personally identifiable information ("PII"). In December 2020 and January 2021, Accellion detected breaches of its electronic information systems that compromised millions of people's most sensitive information (the "Data Breach"). The PII of Flagstar's customers and employees was stolen in the breach. The stolen information includes names, Social Security numbers, account numbers, phone numbers, and addresses.

2.      PII stolen in the hack has already been posted on the internet in an attempt to extort payment for the stolen data. Plaintiffs have spent significant time addressing the Data Breach and have also paid for more robust credit monitoring than the service Flagstar is currently offering.

3.      Plaintiffs by this action seek compensatory damages together with injunctive relief to remediate Flagstar's failure to secure their PII, and to provide credit monitoring, identity theft insurance, and credit repair services to protect the class of Data Breach victims from identity theft and fraud.

## II.   <u>PARTIES</u>

4.     Plaintiff Andrew Hawkins is a citizen and resident of Humble, Texas.

He was a mortgage customer with Flagstar from October 2016 to June 2019. On

March 27, 2021, Mr. Hawkins received a letter from Flagstar, dated March 15,

2021, informing him of the Data Breach and advising him to take protective

measures. After being notified of the Data Breach, Mr. Hawkins purchased credit

monitoring services through Experian. While Flagstar offered two years of

monitoring through Kroll, Mr. Hawkins's research indicated that Experian's

service would provide more robust protection. He has received an influx of scam

calls and emails since the Data Breach. His sensitive personal information,

including his Social Security number, was compromised in the Data Breach.

Upon receipt of the Data Breach notification letter, Mr. Hawkins experienced

stress and anxiety from concerns that he faces an increased risk of identity theft,

fraud, and other types of monetary harm.

5.     Plaintiff Amber Chavez is a citizen and resident of Barstow,

California. She has had a savings account with Flagstar since 2012. She also

opened a savings account with Flagstar for her minor daughter. In March 2021

Ms. Chavez received a letter from Flagstar, dated March 15, 2021, informing her

of the Data Breach and advising her to take protective measures. Her sensitive

personal information, including her and her daughter's Social Security numbers,

was compromised in the Data Breach. Upon receipt of the Data Breach notification letter, Ms. Chavez experienced stress and anxiety from concerns that she faces an increased risk of identity theft, fraud, and other types of monetary harm.

6.      Plaintiff Doreen Endress is a citizen and resident of Granby, Connecticut. She has been customer with Flagstar for the past four years. On March 24, 2021, Ms. Endress received a letter from Flagstar, dated March 15, 2021, informing her of the Data Breach and advising her to take protective measures. After being notified of the Data Breach, Ms. Endress spent 10 hours securing financial accounts with additional password protection and two-factor authentication. Her sensitive personal information, including her Social Security number, was compromised in the Data Breach. Upon receipt of the Data Breach notification letter, Ms. Endress experienced stress and anxiety from concerns that she faces an increased risk of identity theft, fraud, and other types of monetary harm.

7.      Defendant Flagstar Bank was chartered in 1987 as a federal savings bank. It now has assets of $31 billion and is the sixth largest bank mortgage originator, and the second largest savings bank, in the United States. Flagstar's principal place of business is located at 5151 Corporate Drive, Troy, Michigan.

## III.   <u>JURISDICTION AND VENUE</u>

8.     This Court has jurisdiction over the lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Flagstar and class members are domiciled in different states.

9.     The Court has personal jurisdiction over Flagstar because its principal place of business is within this District and it has sufficient minimum contacts in Michigan to render the exercise of jurisdiction by this Court proper and necessary.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Flagstar is headquartered in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## IV.   <u>FACTUAL ALLEGATIONS</u>

### Customers and Employees Trust Flagstar with Their PII

11.     Flagstar provides banking and lending services. Customers and employees must provide Flagstar with a variety of sensitive, private information, including Social Security numbers, first and last names, phone numbers, and addresses, to bank with or be employed by Flagstar.

12.     On its website, Flagstar recognizes that "[t]he war against cyber criminals is fought daily as attacks become more difficult to detect and stop," and there is "no way to predict the damage that can be caused by a single cyber attack."[1] Flagstar knows that "identity fraud affects 17 million people on an annual basis" and that its customers entrust it with their "data and information that is valuable to cyber criminals."

13.     Flagstar advises its customers to follow "10 cyber security tips to safeguard against potential online threats." The second of Flagstar's cyber security tips is: "update your software." Flagstar emphasizes the importance of "mak[ing] sure your programs are up to date and running the latest version."

14.     Plaintiffs and Class members reasonably expected that Flagstar would keep their PII confidential and would not make unauthorized disclosures of this information. Plaintiffs and Class members relied upon Flagstar to securely maintain their PII and to adopt and maintain security measures that would prevent its involuntary disclosure.

15.     Flagstar did not implement reasonable cyber security measures and failed to take appropriate steps to protect and secure the personal information of its employees and customers.

---

[1] https://www.flagstar.com/financial-resource-center/cyber-safety.html (last visited May 6, 2021).

**Flagstar's Files Are Breached by Cyber Criminals**

16.      On or around March 15, 2021, Flagstar began mailing notice of the Data Breach to affected persons.

17.      In the notice, Flagstar states, "Accellion, a vendor that Flagstar uses for its file sharing platform, informed Flagstar on January 22, 2021 that the platform had a vulnerability that was exploited by an unauthorized party."[2] And "the unauthorized party was able to access some of Flagstar's information on the Accellion platform."

18.      The notice informs affected persons that on March 6, 2021, Flagstar "determined that one or more of the documents removed from the Accellion platform contained your Social Security Number, First Name, Last Name, Account Number, Phone Number, Address."

19.      According to Accellion, the electronic intrusion occurred on a service called Accellion FTA. Accellion described this FTA platform as a "20 year old product nearing end-of life" and stated it had "encouraged all FTA customers to

---

[2] https://www.doj.nh.gov/consumer/security-breaches/documents/flagstar-bank-20210312.pdf;
https://oag.ca.gov/system/files/Flagstar%20Bank%20Ad%20Standard%20r3prf.pdf; https://www.doj.nh.gov/consumer/security-breaches/documents/flagstar-bank-20210312.pdf (last visited May 6, 2021).

migrate to kiteworks." Accellion also stated its intent to "accelerate[] our FTA end-of-life plans in light of these attacks."[3]

20.   Accellion FTA runs on an operating system called CentOS-6, which reached end-of-life status on November 30, 2020. CentOs-6 stopped receiving full updates on May 10, 2017 and stopped receiving maintenance updates on November 30, 2020.

21.   For three years leading up to the Data Breach, Accellion encouraged its customers, including Flagstar, to upgrade from the Accellion FTA platform for three years. Flagstar failed to do so.

22.   Although Accellion represented that its "customers were promptly notified of the attack on December 23, 2020," Flagstar claimed it was not informed of the Data Breach until January 22, 2021.

23.   Flagstar Data Breach notification letters advise the affected persons to take protective measures, such as reviewing accounts frequently, signing up for credit monitoring, placing fraud alerts, and requesting a credit freeze.

24.   Flagstar knew that safeguarding the PII of its customers and employees is of the utmost importance. Over the past several years, data

---

[3] https://www.accellion.com/company/press-releases/accellion-provides-update-to-recent-fta-security-incident/ (last visited Apr. 27, 2021).

breaches like the incursion into Flagstar's electronic systems have occurred and been reported on in the news.

25.    Flagstar itself was the subject of a data security breach in 2009, when one of its vendor's laptops containing Social Security numbers of its customers was stolen.

26.    Social Security numbers and other PII are valuable to criminals. This information can be and has been sold and traded on the dark web black market.

27.    The loss of a Social Security number is particularly troubling because it cannot easily be changed and can be misused in a range of nefarious activities, such as filing fraudulent tax returns to steal tax refund payments, opening new accounts to take out loans, and other forms of identity theft.

28.    A stolen Social Security number could also be used to intercept Economic Impact Payments under the American Rescue Plan Act of 2021. Flagstar's failures, alone and through its agents, to protect Plaintiffs' Social Security numbers and other PII also exposes them to heightened risks that past or future Covid relief and stimulus payments will be stolen by criminals. Such risks are material.

29.    While Flagstar has offered two years of credit monitoring services from Kroll, the offer is inadequate because it will not protect Plaintiffs and Class members after those first two years, even though their personal information will

still be in the hands of cyber criminals. Criminals often wait for a year or more before using stolen data for identity theft, and once the personal information is posted online, opportunities for misuse will multiple and extend into the future.

30.    Information compromised in the Accellion attack has already been misused in attempts to extort money from breach victims. On its website, Flagstar admits that "those responsible for this incident are in some cases contacting customers by e-mail and by telephone. These are communications from unauthorized individuals responsible for the Accellion incident, and you should not respond to them."[4]

31.    Hackers have also targeted Flagstar with ransom demands, posting Social Security numbers and home addresses of Flagstar employees taken in the breach.

### Accellion FTA Had Foreseeable Vulnerabilities

32.    In mid-December 2020, Accellion learned of two security vulnerabilities in its Accellion FTA software, a product that specializes in large file transfers. In technical terms, the vulnerabilities were described as SQL Injection (CVE-2021-27101) and OS Command Execution (CVE-2021-27104).

---

[4] https://www.flagstar.com/customer-support/accellion-information-center.html (last visited May 6, 2021).

33.     Approximately four days after learning of these vulnerabilities, Accellion released a software patch to remediate the problem, followed by another patch three days later.

34.     In mid-January 2021, Accellion learned of two more security vulnerabilities in its Accellion FTA software. These vulnerabilities were described as Server-Side Request Forgery (CVE-2021-27103) and OS Command Execution (CVE-2021-27102).

35.     After learning of these additional vulnerabilities, Accellion issued a critical security alert on January 22 advising FTA customers—including Flagstar—to shut down their FTA systems immediately.

36.     Approximately three days after learning of the January vulnerabilities, Accellion released a patch to remediate the problem. Three days later, Accellion released another patch to increase the frequency of security anomaly detection.

37.     As a result of these vulnerabilities, Accellion FTA was the subject of a cyberattack that continued into January 2021. Unauthorized third parties gained access to large amounts of PII and other data stored on or being transferred through Accellion FTA.

38.     The cybersecurity firm Mandiant described the Accellion vulnerabilities as being "of critical severity because they were subject to exploitation via unauthenticated remote code execution."[5]

39.     On February 28, Mandiant's review also identified two further vulnerabilities, of "medium" to "high severity."

40.     Mandiant attributed the attack to two separate threat groups—one (UNC2546) responsible for compromising the system, and the other (UNC2582) believed to be responsible for engaging in extortion activity using some of the compromised information.

41.     On February 28, Mandiant's review also identified two further vulnerabilities, of "medium" to "high severity."

## Plaintiffs' Injuries

42.     Each Plaintiff has suffered anxiety and mental distress resulting from Flagstar's failure to secure his or her PII, reasonably fearing identity theft resulting from the Data Breach. Each Plaintiff faces a materially heightened risk of the unauthorized opening of new financial and other accounts in his or her name, and theft of government tax refunds and Covid relief and economic stimulus payments, now and in the future. According to the Federal Trade

---

[5] https://www.accellion.com/sites/default/files/trust-center/accellion-fta-attack-mandiant-report-full.pdf (last visited Apr. 26, 2021).

Commission's Consumer Sentinel Network, in 2020 there were nearly 1.4 million reports of identity theft received through the FTC's identitytheft.gov website, about twice as many as in 2019.[6] Of those reports, over 400,000 came from people who said their information was misused to apply for a government document or benefit, up from some 23,000 in 2019.[7] According to a report by Javelin Strategy & Research, identity theft cost Americans a total of about $56 billion in 2020.[8]

43.     As reported in the Detroit Free Press, Adam Levin, founder of CyberScout and author of a book on identity theft, "said that if criminals do publish Social Security numbers and other personal information, the victims of hacks like that affecting Flagstar customers are at high risk of tax fraud, tax refund diversion, fraudulent unemployment claims and fraudulent new account creation schemes, among other bad things."[9]

44.     Plaintiff Chavez has suffered the additional anxiety and mental distress resulting from her fear that her minor child's stolen PII would subject her to identity theft in the future.

---

[6] https://www.ftc.gov/news-events/press-releases/2021/02/new-data-shows-ftc-received-2-2-million-fraud-reports-consumers.

[7] *Ibid.*

[8] *See*: https://www.cnbc.com/2021/03/23/consumers-lost-56-billion-dollars-to-identity-fraud-last-year.html.

[9] https://www.freep.com/story/money/business/michigan/2021/03/24/flagstar-bank-customers-information-breach-accellion/6987681002/.

45.     Plaintiff Hawkins has incurred direct monetary costs to purchase robust credit monitoring services as a result of the Data Breach.

46.     Plaintiff Hawkins has spent hours of time he would otherwise have had available to work, spend time with his family, or used for other personal purposes to takes steps to deal with the Data Breach and the increased volume of email solicitations and phone call solicitations as a result of the Data Breach.

47.      Plaintiff Endress has spent hours of time she would otherwise have had available to work, spend time with her family, or used for other personal purposes to takes steps to further enhance the security of her PII as a result of the Data Breach.

48.     The time and attention spent by Hawkins and Endress to address their reasonable concerns arising from the Data Breach are compensable in their own right, and further demonstrate the anxiety and mental distress each Plaintiff suffers as a result of Flagstar's failures adequately to protect his or her PII. The notifications by Flagstar of the Data Breach foreseeably triggered anxiety and mental distress for each of Flagstar's employees and customers, and victims of the Data Breach.

49.     Each Plaintiff has lost the ability to control how his or her PII is used; experienced a concomitant diminution in the value of that PII; faces future costs in the form of time, effort, and money to be expended to prevent, detect, contest,

and repair the adverse effects of the theft of his or her PII in the Data Breach; and faces a heightened risk that his or her PII remaining in Flagstar's possession will be compromised in the future due to inadequate measures and systems to protect same.

## V.    CLASS ACTION ALLEGATIONS

50.    Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, predominance, and superiority requirements of Rule 23. The Class and Subclass are defined as:

> **Class**
> All Flagstar employees and customers, and persons whose mortgages were serviced by Flagstar, whose PII was exposed to unauthorized third parties in the Data Breach.

> **California Subclass**
> All Flagstar employees and customers, and persons whose mortgages were serviced by Flagstar,  who are residents of California and whose PII was exposed to unauthorized third parties in the Data Breach.

Plaintiffs reserve the right to modify, change, or expand the Class definition, including proposing additional subclasses, based on discovery and further investigation.

**Numerosity and Ascertainability**

51.     The number of Class members is so large as to make joinder impracticable. Flagstar has reported that over 1.4 million persons were affected by the Data Breach.[10]

52.     The identities and contact information of Class members are readily ascertainable from information and records in the possession, custody, or control of Flagstar. Notice of this action can be readily provided to the Class.

**Typicality**

53.     Plaintiffs' claims are typical of the claims of the Class in that the sensitive personal information of the representative Plaintiffs, like that of all Class members, was compromised in the Data Breach.

**Adequacy of Representation**

54.     Plaintiffs are members of the proposed Class and will fairly and adequately represent and protect its interests. Plaintiffs' counsel are competent and experienced in class action and privacy litigation and will pursue this action vigorously. Plaintiffs have no interest contrary to or in conflict with the interests of Class members.

---

[10] https://apps.web.maine.gov/online/aeviewer/ME/40/9b8a434f-6967-4946-aaf1-fce0f17e2e98.shtml (last visited May 6, 2021).

## Predominance of Common Issues

55.     Common questions of law and fact exist as to all members of the Class and predominate over any questions pertaining only to individual Class members. Among the questions of law and fact common to the Class are:

a.      Whether Flagstar had a duty to implement reasonable cyber security measures to protect Plaintiffs' and Class members' sensitive, personal information and to promptly alert them if such information was compromised;

b.      Whether Flagstar breached its duties by failing to take reasonable precautions to protect Plaintiffs' and Class members' sensitive, personal information;

c.      Whether Flagstar acted negligently by failing to implement adequate data security protocols and otherwise act to secure the sensitive, personal information entrusted to it;

d.      Whether Flagstar unlawfully invaded Plaintiffs' and Class members' privacy by recklessly allowing the Data Breach to occur through its inaction;

e.      Whether Flagstar is liable for any negligence by its agent Accellion;

f.      What relief is warranted for Plaintiffs and the Class under the circumstances; and

g.    The appropriate measure of damages for the breach victims.

### Superiority

56.    A class action is superior to all other available methods for resolving

this controversy. Absent a class action, most Class members would likely find

the cost of pursuing their claims prohibitively high and would have no effective

remedy. Because of the relatively small size of the individual Class members'

claims, few, if any, Class members would seek redress for Flagstar's violations.

57.    Classwide adjudication of common questions of law and fact will

conserve the resources of the courts and promote efficiency and consistent

results.

### Generally Applicable Conduct

58.    Classwide injunctive and corresponding declaratory relief is

appropriate under Rule 23(b)(2), as Flagstar acted and failed to act in a manner

that applies generally to the Class.

### FIRST CAUSE OF ACTION

### Negligence

59.    Plaintiffs incorporate the above allegations as if fully set forth herein.

60.    Plaintiffs assert this claim on behalf of themselves and the Class.

61.     Flagstar collected, stored, and transferred the personal information of Plaintiffs and Class members, including their Social Security numbers, first and last names, account numbers, phone numbers, and addresses.

62.     Flagstar owed Plaintiffs and Class members a duty of reasonable care to preserve and protect the confidentiality of their personal information that it collected. This duty included, among other obligations, maintaining and testing its security systems and computer networks and the security systems and computer networks of its vendors, using up-to-date and secure versions of file transfer software, and taking other reasonable security measures to safeguard and adequately secure the personal information of Plaintiffs and Class members from unauthorized access and use.

63.     The Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6801, also imposes upon Flagstar a duty of reasonable care to preserve and protect the confidentiality of Plaintiffs' and Class members' personal information. The GLBA provides that "[i]t is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a).

64.     Flagstar is a financial institution under the GLBA. *See* 15 U.S.C. §

6809(3). Flagstar collected from Plaintiffs "non public personal information" as

defined in 15 U.S.C. § 6809(4).

65.     The GLBA's implementing regulations provide that Flagstar "may

not, directly or through any affiliate, disclose any nonpublic personal

information about a consumer to a nonaffiliated third party" without first

providing notice to the consumer and an opportunity for the consumer to opt out

of the disclosure. *See* 16 C.F.R. § 313.10; 12 C.F.R. § 1016.10.

66.     The implementing regulations also provide that Flagstar must

"develop, implement, and maintain a comprehensive information security

program that is written in one or more readily accessible parts and contains

administrative, technical, and physical safeguards that are appropriate to

[Flagstar's] size and complexity, the nature and scope of [Flagstar's] activities,

and the sensitivity of any customer information at issue." 16 C.F.R. § 314.3. In

developing, implementing, and maintaining this information security program,

Flagstar must "[i]dentify reasonably foreseeable internal and external risks to the

security, confidentiality, and integrity of customer information that could result

in the unauthorized disclosure, misuse, alteration, destruction or other

compromise of such information, and assess the sufficiency of any safeguards in

place to control these risks." 16 C.F.R. § 314.4(b). Flagstar must also oversee its

service providers by "[t]aking reasonable steps to select and retain service providers that are capable of maintaining appropriate safeguards for the customer information at issue." 16 C.F.R. § 314.4(d)(1).

67. Flagstar violated the GLBA and its implementing regulations by failing to secure its customers' personal information from exposure to unauthorized third parties, by failing to identify foreseeable risks to the security of its customers' data and maintain safeguards to control those risks, and by failing to select and retain service providers capable of maintaining appropriate safeguards for its customers' information.

68. Plaintiffs and Class members were the foreseeable victims of Flagstar's inadequate cybersecurity. The natural and probable consequence of Flagstar's failing to adequately secure its information networks was the hacking of Plaintiffs' and Class members' personal information.

69. Flagstar knew or should have known that Plaintiffs' and Class members' personal information was an attractive target for cyber thieves, particularly in light of data breaches that Flagstar and other entities experienced. The harm to Plaintiffs and Class members from exposure of their highly confidential personal facts was reasonably foreseeable to Flagstar.

70. Flagstar had the ability to sufficiently guard against data breaches by implementing adequate measures to protect its systems, such as by removing the

legacy Accellion FTA software and upgrading to a state-of-the-art, current file transfer software.

71. Flagstar breached its duty to exercise reasonable care in protecting Plaintiffs' and Class members' confidential personal information by failing to implement and maintain adequate security measures to safeguard the information, failing to monitor its systems and files to identify suspicious activity, and allowing unauthorized access to and exfiltration of the information.

72. There is a close connection between Flagstar's failure to employ reasonable security protections for its customers' and employees' personal information and the injuries suffered by Plaintiffs and Class members. When individuals' sensitive personal information is stolen, they face a heightened risk of identity theft and need to: (1) purchase identity protection, monitoring, and recovery services; (2) flag asset, credit, and tax accounts for fraud, including by reporting the theft of their Social Security numbers to financial institutions, credit agencies, and the IRS; (3) purchase or otherwise obtain credit reports; (4) monitor credit, financial, utility, explanation of benefits, and other account statements on a monthly basis for unrecognized credit inquiries and charges; (5) place and renew credit fraud alerts on a quarterly basis; (6) contest fraudulent charges and other forms of identity theft; (7) repair damage to credit and

financial accounts; and (8) take other steps to protect themselves and attempt to avoid or recover from identity theft and fraud.

73. Flagstar also owed a duty to timely disclose to Plaintiffs and Class members that their personal information had been or was reasonably believed to have been compromised. Timely disclosure was necessary so that Plaintiffs and Class members could, among other things: (1) purchase identity protection, monitoring, and recovery services; (2) flag asset, credit, and tax accounts for fraud, including by reporting the theft of their Social Security numbers to financial institutions, credit agencies, and the IRS; (3) purchase or otherwise obtain credit reports; (4) place or renew fraud alerts on a quarterly basis; (5) intensively monitor loan data and public records; and (6) take other steps to protect themselves and attempt to avoid or recover from identity theft.

74. Flagstar breached its duty to timely disclose the Data Breach to Plaintiffs and Class members. After learning of the Data Breach, Flagstar unreasonably delayed in notifying Plaintiffs and Class members of the Data Breach. That unreasonable delay caused foreseeable harm to Plaintiffs and Class members by preventing them from taking timely self-protection measures in response to the Data Breach.

75. The policy of preventing future harm necessitates the finding that Flagstar had an independent duty in tort to protect this data and thereby avoid

reasonably foreseeable harm to Plaintiffs and class, particularly given the extremely sensitive data entrusted to Flagstar.

76.    As a result of Flagstar's negligence, Plaintiffs and Class members have suffered damages in an amount to be determined at trial. Those damages include or may include, without limitation: (1) loss of the opportunity to control how their personal information is used; (2) diminution in the value and use of their personal information entrusted to Flagstar; (3) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and unauthorized use of financial accounts; (4) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including increased costs to use credit, credit scores, credit reports, and assets; (5) unauthorized use of compromised personal information to open new financial and other accounts; (6) continued risk to their personal information, which remains in Flagstar's possession and is subject to further exposure for as long as Flagstar fails to undertake appropriate and adequate measures to protect the personal information in its possession; (7) future costs in the form of time, effort, and money they will expend to prevent, detect, contest, and repair the adverse effects of their personal information being stolen in the Data Breach; and (8) anxiety and mental distress resulting from the foreseeable and reasonable fear that they may become victims of identity theft due to Flagstar's failure adequately to protect their PII.

24

## SECOND CAUSE OF ACTION

### Invasion of Privacy

77.    Plaintiffs incorporate the above allegations as if fully set forth herein.

78.    Plaintiffs assert this claim on behalf of themselves and the Class.

79.    Flagstar wrongfully intruded upon Plaintiffs' and Class members' seclusion. Plaintiffs' and Class members reasonably expected that the personal information they entrusted to Flagstar—such as their Social Security numbers, first and last names, account numbers, phone numbers, and addresses—would be kept private and secure, and would not be disclosed to any unauthorized third party or for any improper purpose.

80.    Flagstar unlawfully invaded Plaintiffs' and Class members' privacy rights by:

a.    failing to adequately secure their personal information from disclosure to unauthorized third parties or for improper purposes;

b.    enabling the disclosure of personal and sensitive facts about them in a manner highly offensive to a reasonable person; and

c.    enabling the disclosure of personal and sensitive facts about them without their informed, voluntary, affirmative, and clear consent.

81.    A reasonable person would find it highly offensive that Flagstar, having received, collected, and stored Plaintiffs' and Class members' names,

25

Social Security numbers, and other personal details, failed to protect that information from unauthorized disclosure to third parties.

82.     In failing to adequately protect Plaintiffs' and Class members' personal information, Flagstar acted knowingly and in reckless disregard of their privacy rights. Flagstar was aware of the security vulnerabilities in Accellion's legacy FTA system but failed to upgrade to a more secure file transfer system or ensure that Accellion patched the vulnerabilities. Flagstar also knew or should have known that its ineffective security measures, and their foreseeable consequences, are highly offensive to a reasonable person in Plaintiffs' position.

83.     Flagstar violated Plaintiffs' and Class members' common law right to privacy, which includes the right to control their personal and private information.

84.     Flagstar's unlawful invasions of privacy damaged Plaintiffs and Class members. As a direct and proximate result of these violations, Plaintiffs and Class members suffered mental distress, and their reasonable expectations of privacy were frustrated and defeated.

## **THIRD CAUSE OF ACTION**

### **Violation of the California Consumer Privacy Act of 2018**
### **Civ. Code § 1798.100 et seq. (CCPA)**

85.     Plaintiffs incorporate the above allegations as if fully set forth herein.

26

86.     Plaintiff Chavez asserts this claim on behalf of herself and the California Subclass.

87.     Section 1798.150(a)(1) of the CCPA provides, "[a]ny consumer whose nonencrypted or nonredacted personal information, as defined by [Civil Code section 1798.81.5(d)(1)(A)] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the Court deems proper.

88.     Plaintiff Chavez is a consumer and California resident as defined by Civil Code section 1798.140(g).

89.     Flagstar is a "business" as defined by Civil Code section 1798.140(c) because it is a "sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners that collects consumers' personal information or on the behalf of which that information is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information, that does business in the State of California." Flagstar has annual gross revenues in excess of $25

million. Flagstar annually buys, receives for the business's commercial purposes, sells, or shares for commercial purposes, alone or in combination, the personal information of 50,000 or more consumers, householders, or devices.

90.    Plaintiff Chavez's and California Subclass members' personal information, as defined by Civil Code section 1798.81.5(d)(1)(A), was subject to unauthorized access and exfiltration, theft or disclosure. The Data Breach described herein exposed, without limitation, Social Security numbers, first and last names, account numbers, phone numbers, and addresses.

91.    Plaintiff Chavez's and California Subclass members' PII was unencrypted and unredacted, which enabled criminals to access it.

92.    The Data Breach occurred as a result of Flagstar's failure to implement and maintain reasonable security procedures and practices for protecting the exposed information given its nature. Flagstar failed to monitor its files to identify suspicious activity, failed to upgrade to a more secure file transfer system that would have obviated the security vulnerabilities in Accellion's legacy FTA system, or to ensure that Accellion patched those vulnerabilities, and allowed unauthorized access to Plaintiff Chavez's and California Subclass members' PII.

93.    Consistent with Civil Code section 1798.150(b)(1), Plaintiff Chavez provided written notice to Flagstar identifying the CCPA provisions Flagstar

violated. If Flagstar is unable to cure or does not cure the violations within 30 days, Plaintiff will amend this complaint to pursue actual or statutory damages as permitted by section 1798.150(a)(1)(A) of California's Civil Code.

94.     Plaintiff presently seeks injunctive and declaratory relief, and any other relief deemed appropriate by the Court, for Flagstar's CCPA violations.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs pray for an order:

A.     certifying this case as a class action, appointing Plaintiffs as Class representatives, and appointing Plaintiffs' counsel to represent the Class;

B.     entering judgment for Plaintiffs and the Class;

C.     awarding Plaintiffs and Class members monetary relief;

D.     ordering appropriate injunctive relief;

E.     awarding pre- and post-judgment interest as prescribed by law;

F.     awarding reasonable attorneys' fees and costs as permitted by law; and

G.     granting such further and other relief as may be just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated: May 19, 2021                     Respectfully submitted,

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
111 S Main St, 3rd Floor
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Daniel C. Girard
Jordan Elias
Adam E. Polk
Simon Grille
GIRARD SHARP LLP
601 California St, Ste 1400
San Francisco, CA  94108
Phone: (415) 981-4800
dgirard@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com
sgrille@girardsharp.com

*Attorneys for Plaintiffs*