# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| PHILIP ANGUS, MARK WIEDDER, TANIA GARCIA, EDWARD BURDICK, RAY HARTER, DANIELLE MEIS, JONTHAN KELLEY, RYAN MARTIN, ARTHUR DORE, ANN KELLY, and KEITH KELLY, on behalf of themselves and all others similarly situated, | Case No.: 2:21-cv-10657-AJT-DRG |
| Plaintiffs, | |
| vs. | |
| FLAGSTAR BANK, FSB, a Michigan-based federally chartered stock savings bank, | |
| Defendant. | |

| | |
|---|---|
| ANDREW HAWKINS, AMBER CHAVEZ, and DOREEN ENDRESS on behalf of themselves and all others similarly situated, | Case No.: 2:21-cv-11165-AJT-DRG |
| Plaintiffs, | |
| vs. | |
| FLAGSTAR BANK, | |
| Defendant. | |

## MOTION FOR CONSOLIDATION AND FOR APPOINTMENT OF GIRARD SHARP LLP AND ANDREW J. MCGUINNESS <u>AS INTERIM CLASS COUNSEL</u>

Pursuant to Federal Rule of Civil Procedure 42(a) and Local Rules 7.1 and 42.1, Plaintiffs Andrew Hawkins, Amber Chavez, and Doreen Endress, through their undersigned counsel, respectfully move for an order consolidating *Hawkins v. Flagstar*, No. 2:21-cv-11165-AJT-DRG (E.D. Mich.) ("*Hawkins*") with *Angus v. Flagstar*, No. 2:21-cv-10657-AJT-DRG (E.D. Mich.) ("*Angus*") for all purposes and ordering the filing of a consolidated complaint. Defendant Flagstar does not oppose the motion to consolidate. Plaintiffs also move under Federal Rule of Civil Procedure 23(g)(3) for an Order appointing Girard Sharp LLP and Andrew J. McGuinness, Esq., as Interim Lead Counsel in the consolidated action. This motion is based on the accompanying Brief in Support, the declaration of Simon S. Grille and exhibit thereto, any additional materials submitted in reply, and any further argument presented to the Court.

On July 2, 2021, pursuant to E. D. Mich. LR 7.1(a), the undersigned counsel conferred with Defendant Flagstar's counsel. Flagstar does not oppose the motion to consolidate and does not support appointment of interim lead counsel at this stage of the litigation.  On July 1, the undersigned counsel contacted counsel for the *Angus* plaintiffs to request availability for a conference about the relief sought in this motion. Counsel for the *Angus* plaintiffs did not respond.

DATED: July 6, 2021          Respectfully submitted,

**ANDREW J. MCGUINNESS**

By: <u>/s/ *Andrew J. McGuinness*</u>

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
111 S. Main Street, 3rd Flr
P O Box 7711
Ann Arbor, MI 48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Adam E. Polk
Jordan Elias
Simon S. Grille
**GIRARD SHARP LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
jelias@girardsharp.com
sgrille@girardsharp.com

*Attorneys for Angus Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| PHILIP ANGUS, MARK WIEDDER, TANIA GARCIA, EDWARD BURDICK, RAY HARTER, DANIELLE MEIS, JONTHAN KELLEY, RYAN MARTIN, ARTHUR DORE, ANN KELLY, and KEITH KELLY, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) | Case No.: 2:21-cv-10657-AJT-DRG |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| FLAGSTAR BANK, FSB, a Michigan-based federally chartered stock savings bank, | ) ) ) ) | |
| Defendant. | ) ) ) | |

|  |  |  |
|---|---|---|
| ANDREW HAWKINS, AMBER CHAVEZ, and DOREEN ENDRESS on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | Case No.: 2:21-cv-11165- AJT-DRG |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| FLAGSTAR BANK, | ) ) | |
| Defendant. | ) ) | |

**BRIEF IN SUPPORT OF MOTION FOR CONSOLIDATION AND FOR APPOINTMENT OF GIRARD SHARP LLP AND ANDREW J. MCGUINNESS AS INTERIM CLASS COUNSEL**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................2

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................3

III.  ARGUMENT..............................................................................................5

     A.   Consolidation of *Hawkins* and *Angus* is Warranted..............................5

     B.   The Court Should Appoint Girard Sharp and Andrew J.
          McGuinness to Leadership Roles......................................................7

          1.   Girard Sharp and Mr. McGuinness Performed Substantial
               Work Investigating This Action..................................................9

          2.   Girard Sharp and Mr. McGuinness Are Prepared to Meet
               the Unique Legal Challenges of This Action............................10

          3.   Girard Sharp and Mr. McGuinness Have Relevant
               Experience and Knowledge of the Applicable Law. ................12

          4.   Girard Sharp and Mr. McGuinness Will Commit the
               Necessary Resources to Advance the Litigation and Will
               Work Efficiently. ..................................................................18

IV.   CONCLUSION.........................................................................................20

## STATEMENT OF ISSUES PRESENTED

1.      Should the Court exercise its discretion to consolidate *Hawkins v. Flagstar*, No. 2:21-cv-11165-AJT-DRG (E.D. Mich.) with *Angus v. Flagstar*, No. 2:21-cv-10657-AJT-DRG (E.D. Mich.)? Movants answer "yes."

2.      Should the Court appoint Girard Sharp LLP and Andrew J. McGuinness to serve as Interim Lead Counsel in the consolidated litigation? Movants answer "yes."

## CONTROLLING OR MOST RELEVANT AUTHORITY

Fed. R. Civ. P. 42(a)

E.D. Mich. LR 42.1

Fed. R. Civ. P. 23(g)

1

## I.      INTRODUCTION

Plaintiffs Andrew Hawkins, Amber Chavez, and Doreen Endress ("*Hawkins* Plaintiffs") respectfully submit this memorandum in support of their motions to consolidate the *Hawkins* and *Angus* actions and to appoint their attorneys as interim class counsel. *Hawkins* and *Angus*[1] arise out of allegations that Defendant Flagstar Bank ("Flagstar") failed to secure its employees' and customers' sensitive personal information, which was hacked on an outmoded file transfer application. Consolidation is unopposed by Flagstar and will prevent duplication of effort while promoting judicial economy and efficiency.

The *Hawkins* Plaintiffs also respectfully ask the Court to appoint Girard Sharp LLP and Andrew J. McGuinness, Esq. to serve as interim counsel for the class of breach victims, either as co-lead counsel or together with any of the other qualified law firms representing plaintiffs in *Angus*. We believe that, instead of the larger leadership structure proposed by plaintiffs in *Angus*, a leaner structure, with local Michigan counsel at the helm, will avoid duplicative work and result in more streamlined case management. Appointing two experienced firms instead of eight to represent the putative class will ensure more decisive and efficient leadership. The lawyers at Girard Sharp also have previously worked with many of the other

---

[1] *Angus* is a consolidated action that combines three class actions filed in this District between March 25 and April 7, 2021.

plaintiffs' firms involved in *Angus*, often in a co-leadership position, and are prepared do so again here. If appointed, we will propose a protocol requiring the public filing of time and expense summaries, a protocol that has been approved by multiple federal judges and which ensures transparent billing and no surprises.

Accordingly, for the reasons set forth in more detail below, the Court should consolidate *Hawkins* and *Angus* and appoint interim class counsel and order the filing of a consolidated complaint.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant Flagstar uses Accellion, a cloud solutions company, to collect and transfer personally identifiable information ("PII"). In December 2020 and January 2021, Accellion detected breaches of its electronic information systems that compromised millions of people's most sensitive information (the "Data Breach"). The PII of Flagstar's customers and employees—names, Social Security numbers, financial account numbers, phone numbers, and addresses— was stolen in the Data Breach.

Four lawsuits arising out of the Data Breach have been filed against Flagstar in this district. Three of four were consolidated in *Angus*, and the plaintiffs in *Angus* filed a consolidated complaint on June 14, 2021. *See Angus* ECF No. 18. On May 19, 2021, Girard Sharp and Andrew McGuinness filed the *Hawkins* complaint. While the *Hawkins* Plaintiffs filed the last of the Michigan

actions, Girard Sharp was one of the first to initiate class action litigation arising out of the Data Breach. Before the earliest filed of the Michigan actions (*Angus*, filed March 25), Girard Sharp had already brought similar claims against Accellion in the Northern District of California—*Rodriguez v. Accellion*, No. 5:21-cv-01272-EJD (N.D. Cal. filed Feb. 22, 2021). Girard Sharp was in the lead in identifying the Data Breach, investigating its causes and impact, and developing the claims for relief. As news of the Data Breach revealed that additional entities, including Flagstar, were affected, Girard Sharp responded accordingly and asserted claims against Flagstar in this district. Girard Sharp also filed a similar action against Kroger, *Baer v. Kroger*, No. 1:21-cv-00323-TSB (S.D. Ohio), another Accellion client that was hacked.

On March 31 the plaintiffs in a separate class action pending in the Northern District of California moved the Judicial Panel on Multidistrict Litigation to transfer and centralize cases arising out of the Data Breach against different defendants. *See In re Accellion, Inc., Customer Data Sec. Breach Litig.*, No. MDL 3002, — F. Supp. 3d —, 2021 WL 2370722, at *1 (J.P.M.L. June 7, 2021). Girard Sharp did not support the motion. *See* Declaration of Simon S. Grille ("Grille Decl.," Exh. 1, attached), ¶ 4. The Panel denied it, concluding in part that "discovery can be informally coordinated" across these actions. *In re Accellion*, 2021 WL 2370722, at *2.

4

## III.   ARGUMENT

### A.   Consolidation of *Hawkins* and *Angus* is Warranted.

*Hawkins* and *Angus* should be consolidated under Rule 42(a) because they name the same defendant, involve substantially similar facts and claims, and remain at the same early stage. *See Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993) (court may consolidate actions "involving a common question of law or fact.") (quoting Fed. R. Civ. P. 42(a)); *Young v. Hamric*, No. CIV.07-12368, 2008 WL 2338606, at *4 (E.D. Mich. June 4, 2008) ("The consolidation of separate actions presenting a common issue of law or fact is the essential function of Fed. R. Civ. P. 42."). The close similarities between *Hawkins* and *Angus* weigh strongly in favor of consolidation. *See Miller v. U.S. Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1984) ("The proper solution to the problems created by the existence of two or more cases involving the same parties and issues, simultaneously pending in the same court would be to consolidate them under Rule 42(a) of the Federal Rules of Civil Procedure.") (citation omitted). Flagstar does not oppose consolidation. *See* Grille Decl., ¶ 16.

Consolidating *Hawkins* and *Angus* and any later filed or removed cases will streamline this litigation, allowing the Court to efficiently resolve common issues. *See*, *e.g.*, *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 866 (E.D. Mich. 2019) ("Once the threshold requirement of establishing a common question of law or fact

is met, the decision to consolidate rests in the sound discretion of the district

court.") (citing *Stemler v. Burke*, 344 F.2d 393, 396 (6th Cir. 1965)); *Young v.*

*Hamric*, No. CIV.07-12368, 2008 WL 2338606, at *4 (E.D. Mich. June 4, 2008);

*Guild Assocs., Inc. v. Bio-Energy (Washington), LLC*, 309 F.R.D. 436, 441 (S.D.

Ohio 2015) ("Absent prejudice, consolidation is usually the most efficient method

of adjudicating cases arising from common law or fact."). The same nucleus of

operative fact gives rise to *Hawkins* and *Angus*; all claims will hinge on whether

Flagstar failed to implement reasonable cyber security measures to protect its

customers' and employees' sensitive information. Other common factual questions

include when Flagstar learned of the breach, when Flagstar learned of

vulnerabilities in the Accellion FTA software, and whether Flagstar promptly

notified affected persons of the Data Breach. "Thus, consolidation will

undoubtedly further judicial economy in that one case will resolve all of the factual

disputes[.]" *Maiteki v. Marten Transp. Ltd.*, No. 12-CV-2021-WJM-CBS, 2014

WL 4331664, at *2 (D. Colo. Sept. 2, 2014).

Flagstar will file a single response to a consolidated complaint, instead of

separate responses to separate complaints. Moreover, with regard to claims that

proceed in this forum, consolidation for pretrial purposes will prevent duplicative

discovery given that both actions involve the same relevant documents—*e.g.*,

Flagstar's cyber security protocols and investigation of the Data Breach—and the

same Flagstar witnesses will be deposed. *See*, *e.g.*, *Young*, 2008 WL 2338606, at
*6 ("Consolidation will allow a single streamlined discovery process and a single
evidentiary proceeding, thus avoiding needless duplicative hearings and
motions."); *MacLean v. Evans, Mechwart, Hambleton & Tilton, Inc.*, No. 2:09-
CV-521, 2009 WL 2983072, at *2 (S.D. Ohio Sept. 14, 2009).

Consolidation will not cause any prejudice, added costs, or delay. The cases
remain in their initial stages with no responsive pleading having been filed and no
discovery yet conducted. Accordingly, "[t]he Court has a legitimate interest in
judicial economy here that is not outweighed by potential prejudice." *Gamboa*, 381
F. Supp. 3d at 867. Thus, consolidation is warranted in this situation and should be
granted.

### B. The Court Should Appoint Girard Sharp and Andrew J. McGuinness to Leadership Roles.

The Federal Rules empower the Court to "designate interim counsel to act
on behalf of a putative class before determining whether to certify the action as a
class action." Fed. R. Civ. P. 23(g)(3). The "most important" goals in appointing
counsel to a leadership position are "achieving efficiency and economy" and
ensuring that the interests of the class are well served. Federal Judicial Center,
Manual for Complex Litigation §§ 10.221, 21.212 (4th ed. 2004). Appointing
interim counsel "clarifies responsibility for protecting the interests of the class
during precertification activities, such as making and responding to motions,

conducting any necessary discovery, . . . and negotiating settlement." *Id.* § 21.11; *see also* Fed. R. Civ. P. 23(g) advisory committee's note to 2003 amendment. Appointing counsel is therefore "necessary to protect the interests of the putative class" members here. *Id.*

Early appointment of interim counsel is warranted even in the absence of numerous competing applications. *See, e.g., Tolmasoff v. General Motors, LLC*, No. 16-11747, 2016 WL 3548219, at *9 (E.D. Mich. June 30, 2016) (appointing two law firms as interim class counsel where they filed the only two cases and "others may follow.  Moreover, the Court believes that it would be beneficial to formally identify the counsel responsible, at this pre-certification stage, for protecting the interests of the putative class members."); *Roe v. Arch Coal, Inc.*, No. 4:15-CV-1026 (SNLJ), 2015 WL 6702288, at *3 (E.D. Mo. Nov. 2, 2015) (appointing interim class counsel despite the defendant's argument that "no other counsel currently is competing for appointment," because other firms may have been "investigating whether to file suit" and the pending case "would benefit from designated interim class counsel for efficient case management.").

As discussed below, Girard Sharp and Mr. McGuinness have the skills, experience and resources to best serve as lead counsel in this matter.

### 1.  Girard Sharp and Mr. McGuinness Performed Substantial Work Investigating This Action

While *Hawkins* Plaintiffs filed suit against Flagstar on May 19, their counsel initiated litigation related to the Data Breach in February, soon after it was announced. *See Rodriguez v. Accellion*, No. 5:21-cv-01272-EJD (N.D. Cal. filed Feb. 22, 2011). The facts underlying *Hawkins* and *Angus* were not developed by any one firm or group of firms—each case stems from the same public reporting of the Data Breach. Grille Decl., ¶ 3. News of the Accellion Data Breach predated news of Flagstar's involvement, and Girard Sharp thoroughly investigated the underlying facts before filing some of the first cases stemming from the Data Breach. *Id.*, ¶¶ 3-4. The firm has interviewed and corresponded with dozens of concerned Flagstar customers and employees who contacted the firm. *Id.*, ¶ 5. Girard Sharp has also monitored publicly available information and investigated technical deficiencies in cyber security protocols that led to the hack. *Id.* As part of its investigation, Girard Sharp consulted experts in the fields of computer science and data privacy. *Id.*, ¶ 6. The firm researched Flagstar's public statements concerning cybersecurity and its prior experience with data breaches. *Id.*, ¶ 7. The firm also analyzed Flagstar's corporate structure, and conducted legal research to prepare Plaintiffs' complaint. *Id.* We have also drafted discovery requests and communicated with other attorneys in related actions regarding coordination. *Id.*

### 2.   Girard Sharp and Mr. McGuinness Are Prepared to Meet the Unique Legal Challenges of This Action.

In addition to their comprehensive investigation, proposed interim counsel are well equipped to navigate the legal challenges Plaintiffs can expect to face. Flagstar will likely move to dismiss Plaintiffs' claims for lack of Article III standing, arguing that Plaintiffs have not suffered an injury-in-fact. But Girard Sharp and Andrew McGuinness have alleged cognizable harm for each Plaintiff and will do so in any consolidated complaint. The attorneys at Girard Sharp, joined by Mr. McGuinness, will draw upon their depth of experience opposing similar Rule 12(b)(6) motions to overcome this standing challenge. *See, e.g.*, *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42 (D.C. Cir. 2019) (reversing dismissal of data breach class action for lack of Article III standing in case where Girard Sharp serves as sole lead counsel).

Once the pleadings are settled, the next major hurdle for Plaintiffs will be class certification. The class proposed in the *Hawkins* Plaintiffs' complaint is a unitary group which Flagstar itself treated as a unit for purposes of notification. All claims arise from the same incident, and all class members had personal information in the breached databases and were injured by Flagstar's negligent conduct in failing to protect it. *See In re Target Corp. Customer Data Sec. Breach Litig.*, 2017 WL 2178306, at *6 (D. Minn. May 17, 2017) (finding that "all class members in this case suffered the same injury. All class members were the victims

of the theft of their personal information and suffered the attendant fear that this information might find its way into the wrong hands on the Internet's black market."). As the core issue of Flagstar's negligence will not vary by class member, the class is entirely cohesive as to the key liability elements of Plaintiffs' claims. Determination of these liability issues in a single proceeding will materially advance the litigation and is superior to relitigating them over and over—particularly in light of the costs and expert-witness fees that the parties (including Flagstar) would otherwise incur. Flagstar can feasibly notify the class and individual members can come forward to claim damages in follow-on proceedings. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

   With prudent leadership, therefore, Plaintiffs may maintain a damages class under Rule 23(b)(3). *See, e.g.*, *Smith v. Triad of Ala., LLC*, 2017 WL 1044692, at *8 (M.D. Ala. Mar. 17, 2017), *on reconsideration in part*, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017). Girard Sharp attorneys and Mr. McGuinness will work to develop evidence, including expert testimony, to show that Flagstar's violations attributable to its inadequate data security will be common across the class. *See id.* at *13 (explaining that each class member "alleges injury as a result of [the] records heist, and . . . suffered the same general type of damages. . . . These common issues are pivotal to the resolution of the litigation, and therefore predominate despite individualized questions of causation and damages.").

Plaintiffs can advance one of several common damages models, including damages stemming from the lost economic value of their personally identifiable information, the cost of monitoring and restoration services, or the costs that breach victims now face to manage the increased risk of identity theft.

This case is procedurally complex and the law of data privacy is evolving. A lean leadership structure will allow for efficient and nimble representation. Girard Sharp and Mr. McGuinness are prepared to serve the class as the Court deems appropriate.

### 3.   Girard Sharp and Mr. McGuinness Have Relevant Experience and Knowledge of the Applicable Law.

Girard Sharp has been at the forefront of civil litigation on behalf of consumers whose privacy rights were invaded. The firm is not only committed to excellence but also values diversity and inclusion. Girard Sharp's firm resume, attached as Exhibit A to the Declaration of Simon S. Grille, describes many of the firm's successes both in data privacy matters and in other areas. Girard Sharp has led cases with many features in common with this one. For example:

- Girard Sharp is lead counsel for 21.5 million federal government employees whose private information was hacked and taken from U.S. Office of Personnel Management databases. As indicated above, after the district court dismissed the class claims on standing and immunity grounds, Girard Sharp coordinated a team effort among plaintiffs'

counsel that led to a complete reversal. *See In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d 42 (D.C. Cir. 2019).

- Girard Sharp also served as co-lead counsel for current and former Sony Pictures Entertainment employees whose sensitive personal and financial information was compromised and publicly disclosed as a result of a cyberattack attributed to North Korean intelligence operatives. *See Corona v. Sony Pictures Entertainment, Inc.*, No. 2:14-cv-09600-RGK (C.D. Cal.). In June 2015, the court largely denied Sony's motion to dismiss. 2015 WL 3916744, at *2. Girard Sharp helped lead the negotiations of a class settlement that provided a model for many future data breach settlements, comprising: (1) a non-reversionary settlement fund; (2) the defendant's implementation of more robust data security defenses; and (3) extended identity theft protection services for breach victims.

- In *In re Yahoo! Mail Litigation*, No. 5:13-cv-4980-LHK (N.D. Cal.), Girard Sharp served as co-lead counsel for a class of non-Yahoo Mail subscribers who alleged that Yahoo illegally intercepted their e-mails to Yahoo Mail subscribers, extracting and using the content in violation of state and federal data privacy laws. The court granted class certification,

13

308 F.R.D. 577 (N.D. Cal. 2015), and following cross-motions for summary judgment the matter was successfully resolved. The court's certification opinion in *Yahoo Mail* has been widely cited and adopted as a model for analyzing injunctive-relief issues in data privacy cases.

- In *In re Lenovo Adware Litigation*, MDL No. 2624 (N.D. Cal.), Girard Sharp served as co-lead counsel for a class of computer purchasers whose online activities were surreptitiously monitored by pre-installed software that degraded the computers' performance, operating continuously in the background as it analyzed browsing activity and injected ads into visited webpages. The court certified a nationwide indirect purchaser class for trial on privacy claims. 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016). Girard Sharp ultimately developed a claims process to allocate settlement funds, with each class member afforded the ability to choose between (1) completing a short online claim form to receive a cash award for every purchased computer, or (2) submitting receipts or other documentation to recover sums actually expended as a result of the spyware being on the computer. The court granted final approval, *see* 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019), and Girard Sharp continues to supervise distribution of the fund.

The firm resume describes other privacy cases Girard Sharp has handled

14

successfully. *See* Grille Decl., Ex. A, pp. 13-15. Further, Girard Sharp's experience in class action litigation also extends to other highly complex areas. To provide just two examples:

- In *Billitteri v. Securities America, Inc.*, No. 3:09-cv-01568-F (N.D. Tex.), Girard Sharp, acting as lead counsel for a class of investors, coordinated settlement talks among defendants and hundreds of private arbitration claimants, resulting in a recovery of $150 million that returned approximately 40% of net investor losses. In approving this settlement, U.S. District Judge Royal Furgeson wrote, "Class counsel in this case possess great competence and experience, and the result reached in this case perfectly exemplifies their abilities. The Court has been extremely impressed with the conduct, skill, and accomplishment of class counsel throughout this litigation." 2011 WL 3585983, at *8 (N.D. Tex. Aug. 4, 2011).

- In *In re Lehman Brothers Holdings Securities & ERISA Litigation*, No. 09-MD-2017 (S.D.N.Y.), Girard Sharp was appointed as a member of the executive committee charged with managing MDL proceedings arising out of the collapse of Lehman Brothers Holdings, Inc., the largest bankruptcy in American history. Girard Sharp also served as class counsel for a certified class of retail investors in Lehman-issued principal

15

protection notes sold by UBS Financial Services, Inc. The *Lehman* litigation yielded recoveries of $735 million.

Girard Sharp has obtained orders certifying classes for trial in a range of challenging cases. *See, e.g.*, *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 40 (E.D.N.Y. 2020) (antitrust) (finding Girard Sharp and its co-counsel "extremely qualified and able to represent the certified class."); *In re Macbook Keyboard Litigation*, No. 5:18-CV-02813-EJD, 2021 WL 1250378 (N.D. Cal. Apr. 5, 2021) (products liability); *In re Yahoo Mail Litig.*, 308 F.R.D. 577 (N.D. Cal. 2015) (privacy / injunctive relief); *In re Lenovo Adware Litig.*, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) (privacy / damages).

In addition to this success in certifying and successfully resolving large class actions, Girard Sharp is one of a handful of class action firms that has recently prosecuted a case through trial. On June 11, 2021, a jury awarded $14.975 million to five Pacific Fertility Center patients who lost eggs and embryos as a result of a cryopreservation tank failure. Girard Sharp name partner Dena Sharp served as lead trial counsel for the plaintiffs. The jury found the defendant tank manufacturer, Chart Industries Inc., liable on all claims. The case is *In re Pacific Fertility Center Litigation*, No. 3:18-cv-01586-JSC (N.D. Cal.), and the verdict came in the first trial arising out of the tank failure. Hundreds of other patients also

have claims pending against Chart and Pacific Fertility Center, and Girard Sharp intends to continue trying those cases on schedule.

In contrast to the other lawyers seeking appointment on behalf of *Angus* Plaintiffs, Andrew ("Drew") McGuinness is a Michigan lawyer who is well-versed in the rules and procedures of this Court. Moreover, Mr. McGuinness also is accomplished in complex litigation.

Drew McGuinness has focused his practice on class actions and other complex commercial and consumer litigation for over 30 years, after graduating *magna cum laude* and Order of the Coif from the University of Michigan Law School, where he served as Articles Editor of the Michigan Law Review. After law school he clerked for the Hon. Frank M. Coffin of the United States Court of Appeals for the First Circuit, and spent four years in a national firm's Chicago office. He then returned to Michigan to join Dykema Gossett PLLC, where he became an equity partner and head of its Class Action Defense practice. He was lead counsel for Ford Motor Co. in MDL-1718, *In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.* (at the time the largest ever auto recall), assigned to Hon. Bernard Friedman. He maintained that role after leaving Dykema.

An active member of the Federal Bar Association for the Eastern District of Michigan, for the past decade his practice has focused on consumer, products, and

antitrust class actions as plaintiffs' counsel. Among the dozens of class actions where he has served as plaintiffs' counsel, in 2018 the Hon. David M. Lawson named Mr. McGuinness as lead counsel in *Martin v. Trott Law P.C. and David A. Trott*, Case No. 2:15-cv-12838, which resulted in a $7.5 million class settlement on behalf of homeowners. 2018 U.S. Dist. LEXIS 167531 (E.D. Mich. Sep. 28, 2018).

For the past 12 years Mr. McGuinness has served on the planning committee of the ABA National Institute on Class Actions, where he has moderated numerous panel presentations on a host of class action topics, and separately teaches "Class Actions 101." This Fall he is moderating a panel discussion on standing in class actions. The panel will feature Prof. Samuel Issacharoff of NYU School of Law and Judge Charles Eskridge of the Southern District of Texas. He is co-author of Chapter 7, Class Certification Strategy, and Chapter 10, Trial Plans, of the ABA's CLASS ACTION STRATEGY AND PRACTICE GUIDE. More information and background on Mr. McGuinness is available at his firm website, www.topclasslaw.com.

    **4.    Girard Sharp and Mr. McGuinness Will Commit the Necessary Resources to Advance the Litigation and Will Work Efficiently.**

Girard Sharp has the resources to prosecute this litigation, and is committed to investing those resources as necessary. Grille Decl., ¶¶ 11-13. *E.g.*, *Skold v. Intel Corp.*, No. 1-05-cv-039231 (Cal. Super. Ct.) (settled on first day of trial)

("Class Counsel invested an incredible amount of time and costs . . . . Simply put,

Class Counsel earned their fees"); *see also, e.g.*, *Sugarman v. Ducati N. Am., Inc.*,

No. 5:10-cv-05246, 2012 WL 113361, at *6 (N.D. Cal. Jan. 12, 2012) ("The

Court recognizes that class counsel assumed substantial risks and burdens in this

litigation."); *In re Mercedes-Benz Tele Aid Contract Litig.*, MDL No. 1914, 2011

WL 4020862, at *4 (D.N.J. Sept. 9, 2011) (recognizing that the case "involved

years of difficult and hard-fought litigation by able counsel on both sides").

Girard Sharp's team will be led by Simon Grille and will include Adam Polk,

who co-chairs the ABA's class actions and derivative suits committee, and Jordan

Elias, who published a law review article on privacy topics, *Course Correction—

Data Breach as Invasion of Privacy*, 69 Baylor L. Rev. 574 (2018). Grille Decl.,

¶ 10 & Ex. A. The class will also be well served by Mr. McGuinness, another

experienced advocate who has both the skills and resources to act as co-lead or

liaison counsel and is the only Michigan lawyer seeking appointment.

　　In addition, under a timekeeping protocol Girard Sharp developed, class

counsel file summary time and expense reports on the public docket each quarter,

and only time and expenses expressly authorized in advance by interim lead

counsel may be considered as potentially compensable. Grille Decl., ¶ 14. Public

filing of time and expense reports increases transparency, and ensures there will

be no surprises at the end of the case when class counsel's fee application is

submitted. *Id.*, ¶ 15.

In sum, Girard Sharp and Andrew McGuinness are prepared to take sole responsibility for this case or work cooperatively with counsel from *Angus*. Andrew McGuinness is also prepared to serve as liaison counsel. We do not consider it necessary to appoint a supporting Executive Committee in this case.

## IV.    CONCLUSION

For the foregoing reasons, the *Hawkins* Plaintiffs respectfully request that the Court consolidate *Hawkins* and *Angus* and appoint Girard Sharp LLP as interim lead counsel and Andrew J. McGuinness, Esq. as co-lead or liaison counsel for the proposed class.

DATED: June 24, 2021                          Respectfully submitted,

**ANDREW J. MCGUINNESS, ESQ.**

By: /s/ *Andrew J. McGuinness*

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
111 S. Main Street, 3rd Floor
P.O. Box 7711
Ann Arbor, MI 48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

20

Adam E. Polk
Jordan Elias
Simon S. Grille
**GIRARD SHARP LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
jelias@girardsharp.com
sgrille@girardsharp.com

*Attorneys for Hawkins Plaintiffs*

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| PHILIP ANGUS, MARK WIEDDER, TANIA GARCIA, EDWARD BURDICK, RAY HARTER, DANIELLE MEIS, JONTHAN KELLEY, RYAN MARTIN, ARTHUR DORE, ANN KELLY, and KEITH KELLY, on behalf of themselves and all others similarly situated, | Case No.: 2:21-cv-10657-AJT-DRG |
| Plaintiffs, | |
| vs. | |
| FLAGSTAR BANK, FSB, a Michigan-based federally chartered stock savings bank, | |
| Defendant. | |

| | |
|---|---|
| ANDREW HAWKINS, AMBER CHAVEZ, and DOREEN ENDRESS on behalf of themselves and all others similarly situated, | Case No.: 2:21-cv-11165- AJT-DRG |
| Plaintiffs, | |
| vs. | |
| FLAGSTAR BANK, | |
| Defendant. | |

1

**DECLARATION OF SIMON S. GRILLE IN SUPPORT OF MOTION FOR CONSOLIDATION AND FOR APPOINTMENT OF GIRARD SHARP LLP AND ANDREW J. MCGUINNESS, ESQ. AS INTERIM CLASS COUNSEL**

I, Simon S. Grille, declare as follows:

1.     I am a partner of Girard Sharp LLP, counsel for Plaintiffs Andrew Hawkins, Amber Chavez, and Doreen Endress. ("*Hawkins* Plaintiffs").  I submit this declaration in support of Plaintiffs' Motion for Consolidation and for Appointment of Girard Sharp LLP and Andrew J. McGuinness, Esq. as Interim Class Counsel.  I have personal knowledge of the facts stated herein and, if called upon to do so, could and would testify competently thereto.

2.     On May 13, 2021, my firm filed *Hawkins v. Flagstar*, No. 2:21-cv-11165-AJT-DRG (E.D. Mich.) ("*Hawkins*") alleging that Defendant Flagstar failed to secure its employees' and customers' sensitive personal information, which was hacked on an outmoded file transfer application.

**Background of This Litigation and Girard Sharp's Involvement to Date**

3.     Before filing *Hawkins*, Girard Sharp investigated the facts surrounding the data breach. We filed one of the first class actions relating to the data breach—*Rodriguez v. Accellion*, No. 5:21-cv-01272-EJD (N.D. Cal. filed Feb. 22, 2021)—shortly after the breach was announced. The facts surrounding the breach were publicly available through announcements made by Accellion

2

and other affected companies and through reporting by the press. The technical
analysis of the breach conducted by Mandiant, a security firm hired by Accellion
in the wake of the intrusion, was made publicly available.

4.     We continued to investigate the facts surrounding this data breach,
and filed *Hawkins* after learning that the breach compromised personal
information of Flagstar's customers and employees. My firm has also filed a
similar action against Kroger—*Baer v. Kroger*, No. 1:21-cv-00323-TSB (S.D.
Ohio). Although we filed cases related to the breach in different districts, we did
not support the motion filed with the Judicial Panel on Multidistrict Litigation
that sought to transfer and centralize various cases arising out of the data breach.

5.     Professionals at my firm have interviewed and corresponded with
dozens of concerned Flagstar customers and employees who contacted the firm
concerning the loss of their highly sensitive personal information. Girard Sharp
has also monitored publicly available information and investigated technical
deficiencies in cyber security protocols that made this hack possible.

6.     As part of this investigation, my firm has consulted with experts in
the fields of computer science and data privacy. These consultations have shown
how readily electronic information can be compromised, the need to ensure
careful protection and monitoring of electronic systems, and the negative

ramifications for breach victims—including exposure to the predations of cyber criminals.

7.     Among other work, professionals at my firm researched Flagstar's public statements concerning cybersecurity and its prior experience with data breaches. We also analyzed Flagstar's corporate structure and conducted legal research to prepare Plaintiffs' complaint. The firm has drafted discovery requests and has communicated with other attorneys in the Related Actions regarding coordination.

## Girard Sharp's Relevant Experience

8.     Girard Sharp has repeatedly been appointed to leadership positions by federal and state courts in a variety of substantive legal contexts.  Attached as **Exhibit A** is the firm's current resume, which provides further information about the firm's relevant experience.

9.     Some representative cases in which my firm served in a leadership capacity, and which illustrate the range of the firm's accomplishments in representing injured parties, include:

- *In re Pacific Fertility Center Litigation*, No. 3:18-cv-01586-JSC (N.D. Cal.). Girard Sharp, acting as co-lead trial counsel for the plaintiffs, secured a $14.975 million jury verdict on June 11, 2021 for five Pacific Fertility Center patients who lost eggs and embryos as a result of a cryopreservation tank failure. The jury found the defendant tank manufacturer, Chart Industries Inc., liable on all claims. The verdict came

in the first trial arising out of the tank failure. Hundreds of other patients of the fertility center also have claims pending against Chart and Pacific Fertility Center, and additional trials are scheduled for the fall of 2021.

- *Billitteri v. Securities America Inc.*, No. 3:09-cv-01568-F (N.D. Tex.). Girard Sharp served as lead counsel in an action brought by investors in a failed investment scheme who asserted claims under Texas state securities laws. Girard Sharp coordinated settlement negotiations with bankruptcy trustees and competing plaintiff groups, securing a global $150 million settlement. In approving the settlement, the court stated: "Class counsel in this case possess great competence and experience, and the result reached in this case perfectly exemplifies their abilities. The Court has been extremely impressed with the conduct, skill, and accomplishment of class counsel throughout this litigation." 2011 WL 3585983, at *8 (N.D. Tex. Aug. 4, 2011).

- *In re USC Student Health Center Litigation*, No. 2:18-cv-04258-SVW (C.D. Cal.). Girard Sharp is interim co-lead counsel in an action brought by women alleging Dr. George Tyndall sexually assaulted them and that USC and the Board of Trustees of USC failed to respond appropriately to Dr. Tyndall's misconduct. Along with co-lead counsel, Girard Sharp negotiated a settlement that would create a $215 million fund and require USC to adopt and implement procedures to identify and prevent sexual misconduct. The Court finally approved the settlement on February 25, 2020.

- *In re U.S. Office of Personnel Management Data Security Breach Litigation*, 15-mc-1394 (D.D.C.). Girard Sharp is sole lead counsel for the 21.5 million federal government employees whose private information was hacked and taken from U.S. Office of Personnel Management databases. After the district court dismissed the class claims on standing and immunity grounds, Girard Sharp coordinated a team effort among plaintiffs' counsel that led to a complete reversal.

- *In re Yahoo! Mail Litigation*, No. 5:13-cv-4980-LHK (N.D. Cal.). Girard Sharp served as co-lead counsel for a class of non-Yahoo Mail subscribers who alleged that Yahoo illegally intercepted their e-mails to Yahoo Mail subscribers, extracting and using the content in violation of state and federal data privacy laws. The Court granted the plaintiffs' motion for class certification, 308 F.R.D. 577 (N.D. Cal. 2015), and following cross-

motions for summary judgment the matter was successfully resolved.  The Court's class certification opinion in *Yahoo Mail* has been widely cited and adopted as a model for analyzing injunctive relief issues in privacy cases.

- *In re Lenovo Adware Litigation*, MDL No. 2624 (N.D. Cal.).  Girard Sharp served as co-lead counsel for a class of computer purchasers whose online activities were surreptitiously monitored by pre-installed software.  The undisclosed spyware degraded the computers' performance, operating continuously in the background as it analyzed browsing activity and injected ads into visited webpages.  Judge Whyte certified a nationwide indirect purchaser class for trial on privacy claims.  2016 WL 6277245 (N.D. Cal. Oct. 27, 2016).  After the defendants agreed to a non-reversionary cash settlement, Girard Sharp developed a claims process that allowed each participating class member to choose between (1) completing a short online claim form to receive an estimated $40 cash payment for every purchased computer, or (2) submitting receipts or other documentation to recover sums actually expended as a result of the spyware being on the computer, up to $750.  The court granted final approval of the settlement in April 2019, *see* 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019).

- *Corona v. Sony Pictures Entertainment, Inc.*, No. 2:14-cv-09600-RGK (C.D. Cal.).  Girard Sharp served as co-lead counsel for current and former Sony Pictures Entertainment employees whose sensitive personal and financial information was compromised as a result of a cyber-attack reportedly perpetrated by North Korea.  The Court approved a comprehensive class-wide settlement.

- *Daccache v. Raymond James Financial, Inc.*, No. 1:16-cv-21575-FAM (S.D. Fla.).  Girard Sharp served as a member of the Plaintiffs' steering committee in an action brought on behalf of victims of the Jay Peak investment fraud—the largest in the history of the EB-5 visa program.  The case has generated partial settlements to date of $150 million and continues against non-settling defendants.

- *Paeste v. Government of Guam*, No. 1:11-cv-00008 (D. Guam).  Girard Sharp obtained a permanent injunction against the government of Guam requiring the timely payment of refunds of the Guam Territorial Income Tax.  The plaintiffs challenged the government's refund program, pursuant to 42 U.S.C. § 1983, as a violation of equal protection and asserted claims

6

under the Organic Act of Guam.  The Ninth Circuit affirmed the district
court's orders, rejecting Guam's sovereign immunity and subject matter
jurisdiction arguments.  798 F.3d 1228, 1234 (9th Cir. 2015), *cert. denied*,
136 S. Ct. 2508 (2016).

- *Bentley v. LG, Electronics U.S.A., Inc.*, No. 19-cv-13554 (D. N.J.);
  *Sosenko v. LG Electronics U.S.A., Inc.*, No. 8:19-cv-00610-JLS-ADS (C.D.
  Cal.). Girard Sharp served as co-lead counsel representing consumers who
  claimed LG knowingly sold defective refrigerators. The refrigerators failed
  prematurely, and many families were without a refrigerator for weeks. On
  December 18, 2020, the court granted final approval a class settlement that
  benefited the owners of approximately 1,550,000 LG refrigerators.
  Members of the class received cash reimbursements as well as extended
  warranty coverage. Those without supporting documents could receive up
  to $450, and those with supporting documents could receive several
  thousand dollars.

- *In re Nexus 6P Products Liability Litigation*, No. 5:17-cv-02185-BLF
  (N.D. Cal). Girard Sharp was appointed as co-lead counsel in a class action
  alleging that Nexus 6P smartphones suffer from a defect that renders the
  phones inoperable through an endless boot-loop cycle and an accelerated
  battery drain that causes the phones to shut off prematurely. On November
  11, 2019, the court approved a $9.75 million class settlement, stating in
  part that "Class counsel has extensive experience representing plaintiffs
  and classes in complex litigation and consumer class actions. . . . [T]he
  quality of their work is reflected in the results achieved for the class." 2019
  WL 6622842, at *10, *12 (N.D. Cal. Nov. 12, 2019).

- *Weeks v. Google LLC*, No. 18-cv-00801-NC (N.D. Cal.). Similarly, Girard
  Sharp served as co-lead counsel representing owners of Google Pixel and
  Pixel XL smartphones. Plaintiffs alleged that a defect in the Google phones
  caused the microphones to fail; as a result, users were unable to make calls,
  dictate texts, record audio, search the web with voice command, or use the
  advertised Google Assistant feature. On December 6, 2019, the court
  approved a cash settlement for the class that it deemed "excellent."

- *In re American Express Financial Advisors Securities Litigation*, No. 04-
  cv-01773-DAB (S.D.N.Y.).  Girard Sharp also was co-lead counsel in this
  case representing individuals who bought financial plans and invested in
  mutual funds from American Express Financial Advisors.  American

Express allegedly steered its clients into underperforming "shelf space funds" to reap kickbacks and other financial benefits.  The court granted final approval of a settlement providing $100 million in cash and other relief.

- *In re H&R Block Express IRA Litig.*, MDL No. 1786, No. 4:06-md-1786 (W.D. Mo.).  Girard Sharp served as co-lead counsel on behalf of consumers who invested in H&R Block retirement accounts and were assessed inadequately disclosed fees. The case, which involved claims under the Missouri Securities Act of 2003, Missouri's Merchandising Practices Act, and state common law, settled in coordination with an action by the New York Attorney General. The $19.5 million settlement fund provided consumers full refunds of all fee payments with interest.

- *Mitchell v. American Fair Credit Assoc.*, No. 785811-2 (Cal. Super. Ct. Alameda County); *Mitchell v. Bankfirst, N.A.*, No. C-97-1421-MMC (N.D. Cal.).  Girard Sharp served as lead counsel in a predatory lending class action involving alleged violations of the Truth in Lending Act and various state statutes, including the California Credit Services Act of 1984.  After the California Court of Appeal addressed a matter of first impression— whether a credit services organization could modify its membership contract to require arbitration and preclude class relief by notifying its members by mail that continued membership constituted acceptance of the modification, *see* 99 Cal. App. 4th 1345, 1348 (2002)—the case resulted in a settlement valued at over $40 million in refunds, elimination of adverse credit references, and debt forgiveness.

10.    The attorneys assigned to this matter at my firm are Jordan Elias, Adam Polk, and myself. Mr. Elias and I have worked on all of the firm's recent data breach cases. Mr. Elias was responsible for the appellate briefing that led the D.C. Circuit to reverse the district court's dismissal in *In re U.S. Office of Personnel Management Data Security Breach Litigation*, *supra*. He also recently published a well-received law review article on privacy topics, *Course Correction—Data Breach as Invasion of Privacy*, 69 Baylor L. Rev. 574 (2018).

Mr. Polk was part of the trial team in *In re Pacific Fertility Center Litigation*, *supra*, and he currently co-chairs the ABA's class actions and derivative suits committee. Over the past several years, I have managed cases that resulted in tens of millions of dollars in payments and restitution to aggrieved class members (*e.g., Bentley v. LG, Weeks v. Google,* and *In re Nexus 6P, supra*). The relevant experience and qualifications of each member of this team are described more fully in the firm resume attached hereto as Exhibit A.

11.    Girard Sharp has the necessary resources to represent the proposed class in this action. Girard Sharp is self-funded and does not rely on litigation finance.

12.    Girard Sharp's attorneys and staff are proficient in the use of litigation support technology, and the firm has invested in the technological resources needed to litigate complex matters.

13.    Girard Sharp is fully committed to pursuing the best interests of Flagstar customers and employees and will devote all the necessary resources to bring this matter to a successful outcome.

## Time and Expense Protocol

14.    Finally, if appointed in this matter, Girard Sharp will propose a protocol for the recording, submission, and review of attorneys' fees incurred by counsel for plaintiffs.  Under this timekeeping protocol, class counsel publicly

9

file summary time and expense reports each quarter.  Only time and expenses expressly authorized in advance by interim lead counsel may be considered as potentially compensable.

15.    Public filing of time and expense reports increases transparency, and I believe that the Court, Defendant, and class members benefit from knowing how much time class counsel are putting into the case.

*    *    *

16.    On July 2, I conferred with counsel for Flagstar concerning the relief sought in this motion. Flagstar does not oppose the motion to consolidate and does not support appointment of interim lead counsel at this stage of the litigation.

17.    On July 1, I contacted counsel for the *Angus* plaintiffs to request availability for a conference about the relief sought in this motion. Counsel for the *Angus* plaintiffs did not respond.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed July 6, 2021 in San Francisco, California.

_____
Simon S. Grille

# EXHIBIT A



## GIRARD SHARP

### Firm Resume

Girard Sharp is a national litigation firm representing plaintiffs in class and collective actions in federal and state courts. The firm serves individuals, institutions and business clients in cases involving consumer protection, securities, antitrust, privacy, and whistleblower laws.

Our clients range from individual consumers and small businesses to Fortune 100 corporations and public pension funds. We have recovered over a billion dollars on behalf of our clients in class actions and non-class cases. In addition to litigation, our firm also provides consulting and strategic counseling services to institutional clients and professionals in securities litigation, and corporate governance. We are committed to achieving favorable results for all of our clients in the most expeditious and economical manner possible.

Girard Sharp has been distinguished as a Tier 1 law firm for plaintiffs' mass tort and class action litigation in the "Best Law Firms" list in the survey published in the U.S. News & World Report's Money Issue. *The National Law Journal (NLJ)* has named Girard Sharp to its elite "Plaintiffs' Hot List," a selection of top U.S. plaintiffs' firms recognized for wins in high-profile cases. In 2020, Girard Sharp was honored with the *Daily Journal*'s "Top Boutiques in California" award. Girard Sharp also was honored as the 2019 Elite Trial Lawyers winner in the category of Insurance Litigation and as a finalist in Consumer Protection Litigation, Pharmaceutical Litigation, and Products Liability Litigation.

Nine of the firm's attorneys have been selected as Northern California Super Lawyers and Rising Stars. Two of the firm's senior attorneys, Daniel Girard and Michael Danko, have been recognized among the "Top 100 Super Lawyers" in Northern California, and were selected by their peers for *The Best Lawyers in America*. *Best Lawyers* also designated Mr. Girard as the 2013 "Lawyer of the Year" in San Francisco for class action litigation. Mr. Girard has earned an *AV-Preeminent* rating from Martindale-Hubbell, recognizing him in the highest class of attorneys for professional ethics and legal skills.

**Partners**
| | |
|---|---|
| *Daniel Girard* | *p. 2* |
| *Dena Sharp* | *p. 4* |
| *Adam Polk* | *p. 5* |
| *Jordan Elias* | *p. 6* |
| *Scott Grzenczyk* | *p. 7* |
| *Simon Grille* | *p. 7* |

**Associates**
| | |
|---|---|
| *Makenna Cox* | *p. 8* |
| *Mani Goehring* | *p. 8* |
| *Trevor Tan* | *p. 8* |
| *Peter Touschner* | *p. 9* |
| *Tom Watts* | *p. 9* |
| *Erika Garcia* | *p. 10* |
| *Sylvain Frayer* | *p. 10* |
| *Deirdre Roney* | *p. 10* |
| *Gina Kim* | *p. 11* |
| *Nina Gliozzo* | *p. 11* |
| *Mikaela Bock* | *p. 11* |
| *Kai Lucid* | *p. 12* |

**Of Counsel**
| | |
|---|---|
| *Michael Danko* | *p. 12* |
| *Kristine Meredith* | *p. 13* |

### SIGNIFICANT RECOVERIES

| | |
|---|---|
| *Privacy Violations* | *p. 13* |
| *Deceptive Trade Practices* | *p. 16* |
| *Defective Products* | *p. 17* |
| *Other Consumer Matters* | *p. 19* |
| *Securities & Financial Fraud* | *p. 21* |
| *Mass Tort* | *p. 23* |
| *Antitrust* | *p. 24* |
| *Government Reform* | *p. 24* |

## Partners



**Daniel Girard** serves as the firm's managing partner and coordinates the prosecution of the various consumer protection, securities, and antitrust legal matters handled by the firm. Under Daniel Girard's leadership, Girard Sharp has become one of the most respected and experienced class action law firms in the United States. Dan believes that, too often, our legal system favors companies and financial institutions over ordinary people. He founded the firm to provide individuals who work hard and play by the rules the same focused, dedicated representation enjoyed by corporations, banks, and insurance companies.

Dan is frequently appointed by courts to lead major complex cases. For example, he served as a lead lawyer for securities investors following the collapse of investment bank Lehman Brothers and oil and gas producer Provident Royalties. He served as lead counsel for commodities investors following the failure of the Peregrine Financial Group. Dan has successfully prosecuted numerous cases for violations of consumer fraud, predatory lending, and unfair competition laws.

Dan's current case work includes serving as sole lead counsel in the *United States Office of Personnel Management Data Breach* class action and in the *Woodbridge Investments Litigation*, and one of the lead attorneys in the *USC Student Health Center Litigation*.

Dan's past and present clients include the California Teachers Retirement System, the Kansas Public Employees Retirement System, the American Federation of Government Employees, Fireman's Fund Insurance Company, Allianz Life Insurance Company, Nu Skin International Inc., and celebrity photographer Gunter Sachs.

Dan has served on several United States Judicial Conference committees. He was appointed by Chief Justice William H. Rehnquist to the United States Judicial Conference Advisory Committee on Civil Rules and served from 2004 through 2010. Chief Justice John G. Roberts appointed Dan to the Standing Committee on Practice and Procedure in 2015 and reappointed him to a second term in 2018.

Dan is a member of the Council of the American Law Institute and currently serves as Chair of the Audit Committee. In addition, he has served as a member of the faculty on several Federal Judicial Programs for federal judges. Dan served on the Advisory Board for the Duke Law School Center for Judicial Studies and the Institute for the Advancement of the American Legal System. He is a member of the Business Law Section of the American Bar Association. He is past Chair of the Business Law Section's Subcommittee on Class Actions, Co-Chair of the Business and Corporate Litigation Committee's Task Force on Litigation Reform and Rule Revision, and Vice-Chair of the Business and Corporate Litigation Committee.

Dan's article, *Limiting Evasive Discovery: A Proposal for Three Cost-Saving Amendments to the Federal*

*Rules*, 87 Denver Univ. L. Rev. 473 (2010), proposed several rule amendments that were ultimately adopted in Federal Rule of Civil Procedure 34(b)(2). Other published articles include: *Managez efficacement vos litiges d'affaires*, Extrait du magazine, Décideurs N°121, November 2010, *Stop Judicial Bailouts*, The National Law Journal, December 1, 2008, and *Billions to Answer For*, Legal Times, September 15, 2008. His speaking engagements include the following: Panelist for COVID and the Courts Conference, Center on Civil Justice at NYU Law School, January 11, 2021; Panelist for First Annual Class Action Annual Case Law and Practices Review Bench-Bar Conference, James F. Humphreys Complex Litigation Center at the George Washington University Law School, November 12-13, 2020; Guest lecturer, Vanderbilt Law School, November 13, 2017; Co-chair for Judicial Training Symposium, Federal Judicial Center and Electronic Discovery Institute, October 2017; Panelist for "The Judicial Perspective and Rule 23 Committee Update," Perrin Conferences' Class Action Litigation Conference, May 31, 2017; Panelist for Multi-district Litigation Roundtable, The George Washington University, April 27-28, 2017; Panelists for "Precision Advocacy: Reinventing Motion Practice to Win," Federal Bar Association, San Francisco Chapter, March 2017; Panelist for Class Action Settlements and Discovery presentations, HB Litigation Conferences, May 3, 2016; Panelist for Data Breach & Privacy presentation, HB Litigation Conferences, February 11, 2016; Panelist for "Hello 'Proportionality,' Goodbye 'Reasonably Calculated,'" Joint Conference of ABA Section of Litigation and Duke Law Center for Judicial Studies, January 28, 2016; Invited Participant in Special MDL Conference, Duke Law Center for Judicial Studies, October 8, 2015; Co-panelist with Judge James P. O'Hara on Discovery Amendments to Federal Rules of Civil Procedure; Kansas City Metropolitan Bar Association, D. Kan., and W. D. of Mo., September 17, 2015; Panelist in Private Breakfast Seminar on Class Action Risk Mitigation Strategies, Lazareff LeBars, September 22, 2015; Invited Participant on Judicial Conference Advisory Committee on Civil Rules, Rule 23 Mini- Conference, September 11, 2015; Attorney Faculty in Managing Complex Litigation Workshop for US District Judges, Federal Judicial Center, August 25, 2015; Moderator and Panelist on panels addressing proposed Rule 23 amendments, Class Action Settlement Conference, Duke Law Center for Judicial Studies, July 2015; Panelist on Role of Consumer Class Actions in the Herbal Supplements Industry, HarrisMartin's MDL Conference: Herbal Supplements Litigation, May 27, 2015; Panelist on Transferee Judge Case Management; Multidistrict Litigation Institute, Duke Law Center for Judicial Studies, April 9-10 2015; Roundtable Participant on Settlement Class Actions, George Washington University Law School, April 8, 2015; Lessons from Recent Data Breach Litigation, Western Trial Lawyers, February 26, 2015; Speaker in Privacy & Cybersecurity Webinar, State Bar of California, February 24, 2015; Panelist on Preservation Issues, Proportionality Discovery Conference, Duke Law Center for Judicial Studies, November 13-14, 2014; Roundtable Participant on Public and Private Enforcement after Halliburton, ATP and Boilermakers, Duke Law Center for Judicial Studies, September 26, 2014; Co-panelist on Consolidation and Coordination in Generic Drug Cases, HarrisMartin's Antitrust Pay for Delay Conference, September 22, 2014; Guest Lecturer on Civil Litigation Seminar, UC Berkeley, Hastings School of Law, September 18, 2014; Panel Moderator on Selection and Appointment of Plaintiffs' Steering Committee, MDL Best Practices, Duke Law Center for Judicial Studies, September 11-12, 2014; Panel on Shareholder Class Action Lawsuits under the New Companies Act, Joint Conference of the Society of Indian Law Firms and the American Bar Association, Delhi, India, February 14-15, 2015; Panelist on Symposium on Class Actions, University of Michigan Law School Journal of Law Reform, March 2013; Co-taught Seminar on Class Actions and Complex Litigation, Duke University Law School, January 2013; Recent Developments in U.S. Arbitration Law, Conference on Business Law in Africa, Abidjan, Côte d'Ivoire, October 2012; Bringing and Trying a Securities Class Action Case, American Association for Justice 2012 Annual Convention, July 2012; Panel on Class Actions, U.S. Judicial Conference Standing Committee on Rules of Practice and Procedure, Phoenix, January 2012; Panel on Paths to (Mass)

Justice, Conference on Globalization of Class Actions and Mass Litigation, The Hague, December 2011; Contentieux et Arbitrage International: les bons réflexes à acquérir (Litigation and International Arbitration: acquiring the right reflexes), Paris, France, March 2011; Panel on Proposals for Rule Amendments and Preservation Obligations, U.S. Judicial Conference Advisory Committee on Rules of Practice and Procedure, January 2011.

Dan has served as a guest lecturer on class actions and complex litigation at the UC Davis School of Law, UC Berkeley School of Law, UC Hastings College of the Law, Vanderbilt Law School and Stanford Law School. Dan has been consistently honored as a Northern California Super Lawyer (2007-2018). He was educated in France as well as the United States and is fluent in French.

**Dena Sharp** is a problem solver who simplifies even the most complicated issues in class action litigation. Dena currently serves as co-lead counsel in the *In re Juul Labs Inc.* multidistrict litigation and in the *In re California Gasoline Spot Market Antitrust Litigation* in the Northern District of California. She also represents prescription drug purchasers as co-lead counsel in the *In re Restasis Antitrust Litigation* and serves as a member of the End-Payer Steering Committee in the *In re Generic Pharmaceuticals Pricing Antitrust Litigation*. In addition, Dena represents clients of a fertility center whose eggs and embryos were affected by a freezer tank malfunction in San Francisco. 

As co-lead counsel in *In re Lidoderm Antitrust Litigation*, a "pay-for-delay" antitrust case that settled for $104.75 million on the eve of trial, Dena worked with her team to win class certification, defeat summary judgment, and obtain the largest recovery for a class of end-payers in similar federal litigation in more than a decade. She has also played a key role in a variety of other high-profile cases, including representing investors in litigation arising from Lehman Brothers' bankruptcy and in matters involving Ponzi schemes and accounting fraud.

The National Law Journal has recognized Dena as an "Elite Woman of the Plaintiffs' Bar" for two consecutive years, honoring her as one of only a handful of lawyers nationwide who has "consistently excelled in high-stakes matters on behalf of plaintiffs" over the course of her career. In 2021, Dena was named one of the "Best Lawyers in America." Dena was honored as a Northern California Rising Star from 2009 to 2016 and has been recognized as a Northern California Super Lawyer since 2017.

Outside the courtroom, Dena is co-author of the widely cited *Sedona Principles: Best Practices and Principles for Electronic Document Production (Third Edition)*. She serves on the board of directors of the Impact Fund, a public interest nonprofit, and as vice chair of the Advisory Council for the Duke Law School Center for Judicial Studies. An editor of the *Duke Law Proportionality Guidelines and Best Practices*, Dena is also co-author of a chapter in a forthcoming ABA book on class action practice and strategy. In 2018, Dena was elected to the American Law Institute. Dena also routinely speaks on issues pertaining to civil procedure and electronic discovery. Most recently she served as co-chair and a faculty member of the Fourth Annual Judicial Training Symposium for Federal Judges, a conference co-hosted by the Federal Judicial Center and Electronic Discovery Institute.

A first-generation American, Dena is fluent in Spanish and German.

**Adam Polk** is a partner at Girard Sharp who takes a client-focused approach to each matter he handles. A devoted advocate, Adam rolls up his sleeves and does whatever it takes to give each of his clients the high-quality representation they deserve. Concentrating his practice on complex consumer, securities, and antitrust class actions, Adam's experience covers all aspects of civil litigation, from initial case investigation and complaint preparation through discovery and trial.



Adam currently serves as co-lead counsel in: (1) *In re Subaru Battery Drain Litigation* (an ongoing consumer protection action concerning defective batteries in Subaru vehicles); and (2) *In re Maxar Technologies Inc. Shareholder Litigation* and *In re Hewlett Packard Enterprise Co. Shareholder Litigation* (actions alleging violations of the Securities Act of 1933). He also serves as part of the co-lead counsel teams in *In re California Gasoline Spot Market Antitrust Litigation* (an antitrust class action alleging manipulation of the spot market for gasoline in California); *In re Pacific Fertility Center Litigation* (a product defect class action related to the alleged failure of an IVF tank holding human eggs and embryos); *In re PFA Insurance Marketing Litigation* (a consumer protection class action alleging the unfair and deceptive sale of life insurance); and as an executive committee member in *In re Allergan Biocell Textured Breast Implant Products Liability Litigation* (a multidistrict litigation centering on allegedly defective breast implants pending in the District of New Jersey).

Recently, Adam served on the lead counsel teams in several cases that resolved favorably for his clients, including *Bentley v. LG Electronics U.S.A. Inc.* and *Sosenko v. LG Electronics U.S.A. Inc.* (class actions alleging that LG's refrigerators are defective and prone to premature failure); and, *In re Nexus 6P Products Liability Litigation and Weeks v. Google, LLC (two consumer class actions against Google relating to defective mobile phones, which resolved for a combined $17 million).* Adam was also instrumental in achieving substantial settlements for his clients in *In re Sears Holdings Corporation Stockholder and Derivative Litigation* ($40 million settlement) and *Daccache v. Raymond James Financial, Inc.* ($150 million partial settlement).

Before joining the firm, Adam externed for the Honorable Sandra Brown Armstrong and the Honorable Claudia Wilken, of the U.S. District Court for the Northern District of California.

Adam is chair of the American Bar Association's Class Action and Derivative Suits committee, for which he is a frequent contributor of content regarding emerging issues in class action litigation. His articles include: *Ninth Circuit: Central District of California's 90-Day Deadline to Move for Class Certification Incompatible with Rule 23*, ABA Practice Points, October 2018, *Fourth Circuit, No Presumption of Timeliness Where One Class Action Plaintiff Moves to Intervene in Another Class Action Prior to the Opt-Out Deadline*, ABA Practice Points, July 2018, *California Supreme Court: Unnamed Class Members Must Intervene or Move to Vacate to Gain Right to Appeal Class Settlements*, ABA Practice Points, May 2018, *Tilting at Windmills: Nationwide Class Settlements After In re Hyundai and Kia Fuel Economy Litigation*, ABA Section of Litigation, Class Actions & Derivative Suits, February 2018 (co-author), *"Ninth Circuit." Survey of Federal Class Action Law*, ABA 2018 (co-author), *Ninth Circuit: No Formal Motion for Reconsideration Needed to Toll 23(f) Deadline*, ABA Practice Points, September 2017, *Eighth Circuit Clarifies CAFA's Local-Controversy Exception Applies to Local Citizens, Not Mere Residents*, ABA Practice Points, May 2017, *Shrink-Wrap Arbitration Clauses Must Be Conspicuously Displayed: Ninth Circuit*, ABA Practice Points, April 2017, *Predispute Arbitration Clauses Targeting Public Injunctive Relief Are Unenforceable: CA Supreme Court*, ABA Practice

Points, April 2017, *Ninth Circuit: Cy Pres Awards Must be Tailored to Plaintiffs' Claims to Justify a Class Action Release*, ABA Practice Points, February 2017, *Rule 23 Does Not Include an 'Administrative Feasibility Requirement: Ninth Circuit*, ABA Practice Points, January 2017.

Adam has been selected by his peers as a Northern California Super Lawyer, Rising Star, each year since 2013. Adam has been named to the National Trial Lawyers "Top 40 Under 40" for two consecutive years. In 2021, Adam was named to *Best Lawyers* "Ones to Watch."



**Jordan Elias**, a partner in the firm, represents consumers and small businesses injured by corporate violations. He has pursued civil claims against monopolists, price-fixing cartels, oil and tobacco companies, and the nation's largest banks. Over the past decade, Jordan has also taken on pharmaceutical companies for collusion leading to inflated prescription drug prices.

Jordan served as head writer for the plaintiffs in the wrongful death cases arising from sudden unintended acceleration of Toyota vehicles. He was the primary author of the plaintiffs' briefs in the California Supreme Court in the landmark Cipro "pay-for-delay" antitrust case, and gained a reversal for the plaintiff in *Pavoni v. Chrysler Group, LLC*, 789 F.3d 1095 (9th Cir. 2015). Jordan also spearheaded the appeal in *In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d 42 (D.C. Cir. 2019), where the court reversed the dismissal of a case brought on behalf of 21.5 million federal government workers whose sensitive private information was hacked. More recently, Jordan argued the successful appeal in *Velasquez-Reyes v. Samsung Electronics America, Inc.*, No. 17-56556 (9th Cir. Sept. 17, 2019), where the Ninth Circuit held that Samsung could not compel individual arbitration of false advertising claims even though its smartphone packaging had an arbitration clause.

Jordan received a California Lawyer Attorney of the Year (CLAY) award in 2016. He has been recognized as a Northern California Super Lawyer, Appellate, since 2014. A former chief arbitrator for the San Francisco Bar Association's attorney-client fee disputes program, Jordan now serves as the program's vice-chair.

In 2017, Jordan was elected to the American Law Institute. He authored the Supreme Court chapter, and co-authored the Ninth Circuit chapter, in the American Bar Association's *Survey of Federal Class Action Law*. He also co-authored the chapter on antitrust standing, causation and remedies in *California State Antitrust and Unfair Competition Law* (Matthew Bender 2019), the chapter on CAFA exceptions in *The Class Action Fairness Act: Law and Strategy* (ABA 2d ed. 2021), and the chapter on jurisdiction and preemption in *California Class Actions and Coordinated Proceedings* (Matthew Bender 2015). Jordan wrote the law review articles "*More Than Tangential": When Does the Public Have a Right to Access Judicial Records?*, Journal of Law & Pol'y (forthcoming); *Course Correction—Data Breach as Invasion of Privacy*, 69 Baylor L. Rev. 574 (2018), *Cooperative Federalism in Class Actions*, 86 Tenn. L. Rev. 1 (2019), and *The Ascertainability Landscape and the Modern Affidavit*, 84 Tenn. L. Rev. 1 (2017). His bar journal articles include "Putting *Cipro* Meat on *Actavis* Bones," 24 No. 2 Competition 1, *State Bar of California* (2015), "Does *Bristol-Myers Squibb Co. v. Superior Court* Apply to Class Actions?" *ABA Section of Litigation, Class Actions & Derivative Suits* (Feb. 25, 2020) (co-author), and "Tilting at Windmills: Nationwide Class Settlements After *In re Hyundai and Kia Fuel Economy Litigation*," *ABA Section of Litigation, Class Actions & Derivative Suits* (Feb. 28, 2018) (co-author).

Jordan was awarded the Field Prize in the humanities at Yale College, where he was an all-Ivy League sprinter. While attending Stanford Law School, he served on the law review and externed for the Honorable Charles R. Breyer of the Northern District of California. After law school, Jordan clerked for the late Judge Cynthia Holcomb Hall of the Ninth Circuit Court of Appeals. He then defended technology companies in securities and intellectual property cases at Wilson Sonsini Goodrich & Rosati, which honored him with the John Wilson Award for winning asylum for refugees from Haiti and Indonesia. Before joining Girard Sharp in 2015, Jordan practiced for seven years at Lieff Cabraser Heimann & Bernstein.

**Scott Grzenczyk** dedicates his practice to representing plaintiffs in antitrust and consumer protection matters. He has wide-ranging experience in all aspects of complex litigation and has served as a member of leadership teams that have recovered hundreds of millions of dollars for the firm's clients. Scott brings a tireless work ethic and a practical, results-oriented approach to his cases.



For several years, Scott has represented union health and welfare funds in cases alleging that large, multinational drug companies illegally inflated the price of prescription drugs. Scott has helped achieve precedent-setting recoveries, including a $104.75 million settlement shortly before trial in a case concerning the prescription drug Lidoderm. He also plays a key role in the firm's work in the *In re Restasis Antitrust Litigation* and *In re Generic Pharmaceuticals Antitrust Litigation* matters.

Scott led the firm's litigation efforts in a class action filed by native inhabitants of Guam bringing due process and equal protection claims against the government of Guam. He also has a track record of successfully representing consumers, including car and cell phone purchasers, in cases involving fraud and unfair business practices. During law school, Scott successfully argued a precedent-setting immigration case before the U.S. Court of Appeals for the Ninth Circuit. He has been honored as a Rising Star by Northern California Super Lawyers every year since 2013. In 2020, Scott was honored as a recipient of the American Antitrust Institute's "Outstanding Antitrust Litigation Achievement by a Young Lawyer" award.

**Simon Grille**, a partner in the firm, is committed to seeking justice for individuals harmed by corporate wrongdoing. He represents plaintiffs in class and complex litigation concerning consumers' rights and financial fraud. He has taken a lead role in consumer class actions against some of the largest technology companies in the world. Simon has been named a Rising Star by Super Lawyers since 2017.



Simon approaches each case with an unwavering commitment to obtaining the best possible outcome for his clients. A creative problem-solver, Simon welcomes the challenges of complex civil litigation. He has substantial experience in all aspects of civil litigation.

Before joining Girard Sharp, Simon worked at a prominent Bay Area law firm, where he represented victims of toxic exposure in complex civil litigation. He also has experience working in-house at a multinational company and as an extern for the Honorable Arthur S. Weissbrodt of the United States Bankruptcy Court for the Northern District of California.

## Associates



**Makenna Cox** handles all aspects of complex class action litigation, including consumer protection cases against some of the nation's largest corporations.

Before joining Girard Sharp, Makenna advocated for musicians' rights and co-authored comments filed with the Federal Communications Commission. She worked during law school at an appellate firm in Los Angeles.

Makenna served as Senior Production Editor on the *Loyola of Los Angeles Entertainment Law Review*. She received her B.A. with honors from the University of San Francisco.



**Mani Goehring** strives to provide clients with prompt attention, reliable guidance, and excellent outcomes. She represents consumers in class action and other complex litigation seeking to hold companies and institutions accountable for misconduct. From intake to resolution, Mani knows that responsiveness and tenacity are key to obtaining favorable results.

Mani previously worked on criminal matters at the Antitrust Division of the U.S. Department of Justice. She also interned for the U.S. Attorney's Office, the San Francisco District Attorney's Office, and the American Civil Liberties Union of Northern California.

**Trevor Tan** focuses on consumer protection class actions and other complex civil litigation, specializing in legal research and writing. He was honored as a Rising Star by Super Lawyers beginning in 2019.



Trevor has considerable experience working in judicial chambers. Before joining Girard Sharp, he clerked for the Honorable Fernando M. Olguin of the U.S. District Court for the Central District of California. Trevor also clerked for Judges of the Los Angeles County Superior Court and the court's Appellate Division.

Trevor received his J.D. from the University of Chicago Law School in 2011. During law school, he was an extern for the Honorable George H. Wu in the Central District of California and a law clerk with the Illinois Attorney General. In addition, he served as a child advocate with the school's immigrant child advocacy clinic and worked on behalf of immigrant children from China. After law school, Trevor represented unaccompanied minors in removal proceedings as a fellow at the Young Center for Immigrant Children's Rights.

Trevor received his undergraduate degree with honors in political science from the University of California, Irvine in 2006.

**Peter Touschner** handles complex class action e-discovery matters for the firm. Before joining Girard Sharp, Peter represented class members harmed by Volkswagen's emissions-related fraud, as well as insureds who were charged inflated premiums due to the anticompetitive practices of a hospital conglomerate.



Peter previously worked as a Research Attorney at the Center for Democracy and Technology, where he investigated deceptive online advertising practices and evaluated proposed cybersecurity legislation. During law school, Peter externed for U.S. District Judge Charles R. Breyer and served as Senior Articles Editor for the Hastings Science and Technology Law Journal.

**Tom Watts** focuses his practice on complex antitrust litigation against monopolists and other wrongdoers. Before joining the firm, Tom clerked for the Honorable Jane Roth on the Third Circuit and the Honorable Robert McDonald of the Maryland Court of Appeals, assisting in a wide variety of appellate and state supreme court matters.



Tom earned a J.D. and master's in public policy *magna cum laude* from Harvard Law School and Harvard Kennedy School. During law school, he gained experience in litigation, appeals, and policy advocacy by interning with the U.S. Department of Justice's Civil Appellate Section, Santa Clara County's Impact Litigation and Social Justice Section, and Public Advocates.

Tom received his B.A. from the University of California, Berkeley, with High Distinction in General Scholarship. He double majored in Classical Languages, in which he received High Honors, and Astrophysics, for which he was the undergraduate commencement speaker.

**Erika Garcia** handles complex e-discovery matters for the firm. She is admitted to practice in California and New York.



Before joining Girard Sharp, Erika worked at a large international law firm with a focus on class action and commercial litigation as well as regulatory investigations. She has negotiated and drafted numerous confidentiality agreements in the mergers and acquisitions setting.

Erika is fluent in Spanish and previously served as a volunteer advocate in Ecuador for refugees from other Latin American countries.

**Sylvain Frayer**, originally from France, obtained an LL.M., *magna cum laude*, from Fordham University School of Law.



Before joining Girard Sharp, Sylvain advised companies on privacy compliance and transactional matters. He also led a government relations team at a technology startup where he improved access to public records data and advised on corporate and compliance issues.

Sylvain specializes in analyzing corporate records in complex civil litigation.

**Deirdre Roney** earned her B.A. with honors from Mills College and her J.D. with high honors from the George Washington Law School.



Deirdre handles electronic discovery in consumer protection, investment fraud, and other complex class actions. She previously focused on securities and investment matters, contributing work to both litigation and transactional projects.

**Gina Kim** focuses her practice on antitrust and securities litigation. She has represented plaintiffs in multidistrict class actions in the pharmaceutical, finance, and internet commerce sectors.
Prior to joining Girard Sharp, Gina was a staff attorney at a boutique antitrust class action firm representing consumers in case involving the airline industry, the automotive parts industry, and foreign exchange markets. She also represented institutional investors in securities litigation at a leading New York-based plaintiff-side firm.



Gina serves the legal community as a member of the San Diego County Bar Association and the Lawyers Club of San Diego, and previously as Vice President of the Korean-American Bar Association of San Diego. She also serves on the board of the Princeton Club of San Diego and is a lifelong member of Mensa. She earned her J.D. from the University of San Diego School of Law and her A.B. from Princeton University.

**Nina Gliozzo** works to seek justice for plaintiffs in complex litigation nationwide. Before joining Girard Sharp, Nina clerked for the Honorable Marsha S. Berzon of the U.S. Court of Appeals for the Ninth Circuit.



Nina earned her J.D., *magna cum laude*, from the University of California, Hastings College of Law. During law school she externed for the Honorable Charles R. Breyer, U.S. District Judge for the Northern District of California. She also served as Executive Symposium Editor for the *Hastings Law Journal,* organizing a symposium featuring a conversation with former Supreme Court Justice Anthony M. Kennedy.

**Mikaela Bock** advocates for mass tort victims and injured consumers in complex civil litigation.



During law school, Mikaela externed in the Northern District of California and was the national champion of the Evan A. Evans Constitutional Law Moot Court Competition. She previously worked for Teach for America, teaching 7th graders in East Palo Alto, California.



**Kai Lucid** focuses his practice on representing clients in investment and financial matters. Before joining Girard Sharp, Kai worked as an associate at the Palo Alto office of a renowned corporate firm based on Wall Street.

Kai earned his J.D., *magna cum laude*, from the University of California, Hastings College of the Law. During law school he externed for two U.S. District Judges for the Northern District of California. Kai also served as Executive Articles Editor for the *Hastings Law Journal*, determining which articles would be published in the Journal.

## Of Counsel



**Michael S. Danko** is a renowned trial lawyer with more than 25 years of legal experience. Mike represents individuals who have suffered catastrophic personal injuries, as well as families of wrongful death victims in cases involving product defects, defective medications and medical devices, airplane and helicopter accidents, and dangerous structures. He has tried cases in state and federal courts throughout the country and has won numerous eight-figure verdicts on behalf of his clients.

Mike represents dozens of victims of a Pacific Gas & Electric gas line explosion and serves on the Plaintiffs' Steering Committee in a California state coordinated proceeding *San Bruno Fire Cases,* JCCP No. 4648. He also serves on the Science Committee for Plaintiffs in *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* MDL No. 2100.

In 2009, Mike won a $15 million jury verdict for a client injured by a defective aircraft part, which earned him a nomination for 2009 California Trial Lawyer of the Year by the Consumer Attorneys of California.

Mike's trial advocacy has helped bring about significant reforms and changes to corporate policies. As lead counsel in *In re Deep Vein Thrombosis Litigation,* MDL No. 1606 (N.D. Cal.), he represented more than one hundred air travelers who suffered strokes, pulmonary emboli, or heart attacks as a result of airline-induced blood clots. He developed theories of liability and proof regarding the cause of his clients' injuries that led to virtually every major air carrier advising air travelers of the risks of deep vein thrombosis and measures to mitigate those risks. Mike also represented parents of children who were injured or killed by a popular candy made by a foreign manufacturer. His work in proving that the candy's unusual ingredients and consistency made it a choking hazard resulted in the candy being removed from Costco and Albertson's stores nationwide, and helped persuade the FDA to ban the candy from further import into the United States.

Mike has been named a Northern California Super Lawyer each year since the award's inception in 2004. He is a *Lawdragon 500* finalist. In 2010, Mike was named one of the Best Lawyers in America. He is a member of the American Association for Justice, the Lawyer Pilots Bar Association and the Consumer Attorneys of California, where he serves on the board of governors. Mike received his A.B. degree from Dartmouth College, *magna cum laude*, in 1980, and earned his J.D. from the University of Virginia School of Law in 1983.

**Kristine Keala Meredith** is a trial attorney specializing in product liability litigation. Kristine served as co-lead counsel with Michael Danko representing more than one hundred air travelers who suffered strokes, pulmonary emboli, or heart attacks as a result of airline-induced blood clots in *In re Deep Vein Thrombosis Litigation*, MDL No. 1606.



Kristine served on the Law and Motion committee in *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* MDL No. 2100, where she assisted in the successful opposition to 15 *Daubert* motions in fewer than three weeks. Before she began representing plaintiffs, Kristine worked on the national defense counsel teams for medical device manufacturers in multi-district litigation including *In re Silicone Gel Breast Implants Product Liability Litigation*, MDL No. 926, and *In re Orthopedic Bone Screw Product Liability Litigation*, MDL No. 1014. She also represented doctors and hospitals in defense of medical malpractice actions, where she worked with some of the world's leading medical experts.

In 2010, Kristine was named a Northern California Super Lawyer. She is currently an officer of the American Association for Justice and the San Mateo County Trial Lawyers Association. She is also a member of the San Francisco Trial Lawyers Association and the Consumer Attorneys of California. She is a former chair of the Minority Issues Committee of the San Francisco Bar Association Barrister Club.

Kristine obtained her B.S. with honors from the University of California at Davis and was awarded a scholarship to attend Brigham Young University's J. Reuben Clark Law School. While in law school, she was awarded the Distinguished Student Service Award and spent a semester at Howard University Law School in Washington, D.C., as a member of the faculty/student diversity exchange.

## FAVORABLE RESULTS AND SIGNIFICANT RECOVERIES

# Privacy Violations

*In re Yahoo Mail Litigation*, No. 5:13-cv-04980-LHK (N.D. Cal.). Girard Sharp represented non-Yahoo email subscribers whose emails with Yahoo email subscribers were illegally intercepted and scanned by Yahoo. The court certified a nationwide class for injunctive-relief purposes, issuing an opinion that has been widely cited. 308 F.R.D. 577 (N.D. Cal. 2015). With cross-motions for summary judgment fully briefed, the parties settled. Yahoo agreed to restructure its email delivery architecture to ensure that incoming and outgoing email would no longer be intercepted while in transit—bringing its email scanning practices into compliance with applicable law—and to disclose

its email scanning practices on its website. The court, in approving the settlement, noted that "Class Counsel achieved these benefits only after several years of litigation," which the court found was conducted "in an effective and cost-efficient manner." 2016 WL 4474612, at *10 (N.D. Cal. Aug. 25, 2016).

*In re Lenovo Adware Litigation*, MDL No. 2624 (N.D. Cal.). Girard Sharp is co-lead counsel for a class of computer purchasers whose online activities were surreptitiously monitored by pre-installed software. The undisclosed spyware degraded the computers' performance, operating continuously in the background as it analyzed browsing activity and injected ads into visited webpages. The Honorable Ronald M. Whyte certified a nationwide indirect purchaser class for trial. 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016). After the defendants agreed to a non-reversionary cash settlement, Girard Sharp helped design a claims process that allowed each participating class member to choose between (1) completing a short online claim form to receive an estimated $40 cash payment for every purchased computer, or (2) submitting receipts or other documentation to recover sums actually expended as a result of the spyware being on the computer, up to $750. The Honorable Haywood S. Gilliam granted final approval of the settlement, *see* 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019), and Girard Sharp continues to supervise distribution of the fund.

*Corona v. Sony Pictures Entertainment*, No. 2:14-cv-09600-RGK-SH (C.D. Cal.). Girard Sharp served as co-lead counsel in a class action brought on behalf of 15,000 current and former employees of Sony Pictures Entertainment following a cyberattack attributed to North Korean intelligence as retaliation for release of the film *The Interview*. In April 2016, the court approved a class settlement that reimbursed actual losses in full and provided extended credit monitoring—a structure adopted in subsequent data breach settlements.

*In re The Home Depot, Inc. Customer Data Security Breach Litigation*, MDL No. 2583 (N.D. Ga.). The Honorable Thomas W. Thrash, Jr. appointed Girard Sharp to the Plaintiffs' Executive Committee in this MDL arising from a breach of Home Depot customers' credit and debit card information. Under the court-approved settlement, class members with documented claims could receive up to $10,000, and the defendant paid an additional $6.5 million to provide 18 months of identity monitoring services for the benefit of class members. 2016 WL 6902351, at *4 (N.D. Ga. Aug. 23, 2016). Judge Thrash described the settlement as "an outstanding result for the Class in a case with a high level of risk," *id.* at *5, and further noted that "Class Counsel obtained an exceptional result . . . ." 2017 WL 9605208, at *1 (N.D. Ga. Aug. 1, 2017).

*In re Target Corp. Customer Data Security Breach Litigation*, MDL No. 2522 (D. Minn.). Girard Sharp served on the Plaintiffs' Steering Committee representing consumers whose personal and financial information was compromised in a breach of Target's point-of-sale systems. After plaintiffs defeated Target's motion to dismiss, *see* 66 F. Supp. 3d 1154 (D. Minn. 2014), the parties agreed to a class settlement that was approved by the MDL court and upheld on appeal, *see* 892 F.3d 968 (8th Cir. 2018). The settlement requires changes to Target's information security practices and delivered cash recoveries to class members under a simplified claim procedure.

*In re Experian Data Breach Litigation*, No. 15-01592 (C.D. Cal.). Girard Sharp serves on the Plaintiffs' Steering Committee in this litigation arising out of a breach of Experian's electronic systems than compromised names, addresses, and social security numbers of T-Mobile subscribers. The Honorable Andrew J. Guilford in 2019 granted final approval of a settlement that established

a $22 million fund and provided identity theft protection services for the benefit of class members.

*In re Adobe Systems, Inc. Privacy Litigation*, No. 5:13-cv-05226-LHK (N.D. Cal.). Girard Sharp was appointed as lead counsel in this consolidated litigation on behalf of consumers asserting privacy and consumer fraud claims arising from a 2013 data breach. Girard Sharp obtained a pivotal ruling when the court denied Adobe's motion to dismiss for lack of standing, ruling that the Supreme Court's decision in *Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013), did not change existing standing jurisprudence. 66 F. Supp. 3d 1197 (N.D. Cal. 2014). Before this ruling, many data breach defendants had obtained dismissals for lack of standing based on *Clapper*. The *Adobe* ruling has been followed by a number of courts, including the Seventh Circuit Court of Appeals in *Remijas v. Neiman Marcus Group, LLC*. 794 F.3d 688, 693–94 (7th Cir. 2015).

*Prather v. Wells Fargo Bank, N.A.*, No. 17-cv-00481 (N.D. Ill.). Girard Sharp served as co-lead counsel in an action alleging that Wells Fargo used an automatic telephone dialing system to repeatedly call the cellular phone numbers of persons with no prior affiliation with Wells Fargo. On December 10, 2019, the Honorable Manish S. Shah of the Northern District of Illinois granted final approval of a settlement that established a fund of $17,850,000 for class members.

*Whitaker v. Health Net of California, Inc.*, No. 2:11-cv-00910-KJM-DAD (E.D. Cal.); *Shurtleff v. Health Net of California, Inc.*, No. 34-2012-00121600-CU-CL (Cal. Super Ct. Sacramento Cty.). Girard Sharp served as co-lead counsel in this patient privacy action. On June 24, 2014, the court granted final approval of a settlement that provided class members with credit monitoring, established a $2 million fund to reimburse consumers for related identity theft incidents, and required material upgrades to and monitoring of Health Net's information security protocols.

*In re Sony BMG CD Technologies Litigation*, No.1:05-cv-09575-NRB (S.D.N.Y.). Girard Sharp served as co-lead counsel for a class of consumers who alleged that Sony BMG incorporated "Digital Rights Management" software into its music CDs, violating the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, and rendering the consumers' computers vulnerable to viruses and spyware. The firm negotiated a settlement that required Sony BMG to promptly recall all affected CDs and provide "clean" CDs and cash to class members.

*In re Countrywide Financial Corp. Customer Data Security Breach Litigation*, MDL No. 1988 (W.D. Ky.). Girard Sharp served on the Plaintiffs' Executive Committee representing a class of millions of actual and potential customers of Countrywide whose personal information was stolen by a former Countrywide employee and then sold to other mortgage lenders. The class settlement approved by the court provided for free credit monitoring, reimbursement of out-of-pocket expenses incurred as a result of the theft, and reimbursement of up to $50,000 per class member for identity theft losses.

*Smith v. Regents of the University of California, San Francisco*, No. RG-08-410004 (Cal. Super Ct. Alameda Cty.). Girard Sharp represented a patient who alleged that UCSF's disclosure of its patients' medical data to outside vendors violated California's medical privacy law. The firm succeeded in negotiating improvements to UCSF's privacy procedures on behalf of a certified class of patients of UCSF Medical Center. In approving the stipulated permanent injunction, the Honorable Stephen Brick found that "Smith has achieved a substantial benefit to the entire class and the public at large."

## Deceptive Trade Practices

*In re Hyundai and Kia Horsepower Litigation*, No. 02CC00287 (Cal. Super. Ct. Orange Cty.). Girard Sharp served as lead counsel in this coordinated nationwide class action against Hyundai for falsely advertising the horsepower ratings of more than 1 million vehicles over a ten-year period. The case was aggressively litigated on both sides over several years. In all, over 850,000 Hyundai vehicle owners received notice of the settlement, which was valued at $125 million and which provided cash and other benefits to class members.

*In re Chase Bank USA, N.A. "Check Loan" Contract Litigation*, No. 09-2032 (N.D. Cal.). Girard Sharp and several other firms led this nationwide class action alleging deceptive marketing and loan practices by Chase Bank USA, N.A. After certifying a nationwide class, the Honorable Maxine M. Chesney granted final approval of a $100 million settlement benefiting Chase cardholders.

*In re Hyundai and Kia Fuel Economy Litigation,* No. 2:13-ml-2424 (C.D. Cal.). In a lawsuit alleging false advertising in connection with the fuel efficiency of various Hyundai and Kia models, the firm served as liaison counsel and in that capacity regularly reported to the court and coordinated a wide-ranging discovery process. The case resulted in a nationwide class action settlement with an estimated value of up to $120 million.

*In re Providian Credit Card Cases*, J.C.C.P. No. 4085 (Cal. Super. Ct. San Francisco Cty.). Girard Sharp served as court-appointed co-lead counsel in this nationwide class action brought on behalf of Providian credit-card holders. The suit alleged that Providian engaged in unlawful, unfair and fraudulent business practices in connection with marketing and assessing fees for its credit cards. The Honorable Stuart Pollack approved a $105 million settlement, plus injunctive relief—one of the largest class action recoveries in consumer credit-card litigation.

*In re MCI Non-Subscriber Telephone Rates Litigation*, MDL No. 1275 (S.D. Ill.). Girard Sharp served as co-lead counsel and recovered an $88 million settlement for MCI telephone subscribers who were charged rates and surcharges applicable to non-subscribers instead of the lower advertised rates. In approving the settlement, the Honorable David Herndon highlighted "the complexity of the issues involved; the vigorous opposition Plaintiffs' counsel faced from sophisticated and well-funded Defendants represented by skilled counsel; the achievement of a very large cash settlement fund under these conditions"; and the "design and implementation of a computerized claims process, which appears to have been highly successful." Daniel Girard argued the key motions in the case and designed the claim procedure.

*Skold v. Intel Corp.*, No. 1-05-CV-039231 (Cal. Super. Ct., Santa Clara Cty.). Girard Sharp represented Intel consumers through a decade of hard-fought litigation, ultimately certifying a nationwide class under an innovative "price inflation" theory and negotiating a settlement that provided refunds and $4 million in cy pres donations. In approving the settlement, Judge Peter Kirwan wrote: "It is abundantly clear that Class Counsel invested an incredible amount of time and costs in a case which lasted approximately 10 years with no guarantee that they would prevail. . . . Simply put, Class Counsel earned their fees in this case."

*Steff v. United Online, Inc.*, No. BC265953, (Los Angeles Super. Ct.). This nationwide class action was brought against NetZero, Inc. and its parent, United Online, Inc. by former NetZero customers. Plaintiffs alleged that defendants falsely advertised their internet service as unlimited and guaranteed for a specific period of time. The Honorable Victoria G. Chaney of Los Angeles Superior Court granted final approval of a settlement that provided full refunds to customers whose services were cancelled, and which also placed restrictions on Defendants' advertising.

*Stoddard v. Advanta Corp.*, No. 97C-08-206-VAB (Del. Super. Ct.). This nationwide class action was brought on behalf of cardholders who were promised a fixed APR for life in connection with balance transfers, but whose APR was then raised pursuant to a notice of change in terms. The Honorable Vincent A. Bifferato appointed the firm as co-lead counsel and approved a $7.25 million settlement.

*Khaliki v. Helzberg's Diamond Shops, Inc.*, No. 11-0010-CV-W-NKL (W.D. Mo.). Girard Sharp and co-counsel represented consumers who alleged deceptive marketing in connection with the sale of princess-cut diamonds. The court approved a favorable settlement, recognizing "that Class Counsel provided excellent representation" and obtained "a favorable result relatively early in the case, which benefits the Class while preserving judicial resources." The court further recognized that "Class Counsel faced considerable risk in pursuing this litigation on a contingent basis, and obtained a favorable result for the class given the legal and factual complexities and challenges presented."

*In re Tyson Foods Inc., Chicken Raised Without Antibiotics Consumer Litigation*, No. RDB- 08-1982 (D. Md.). Girard Sharp served as Class Counsel on behalf of consumers who purchased chicken products misleadingly labeled as having been "raised without antibiotics." After discovery, counsel negotiated a cash settlement that required Tyson Foods to pay class members and make substantial cy pres contributions to food banks.

## Defective Products

*Weeks v. Google LLC*, No. 18-cv-00801-NC (N.D. Cal.). Girard Sharp served as co-lead counsel representing owners of Google Pixel and Pixel XL smartphones. The lawsuit alleged that a defect in the Google phones caused the microphones to fail; as a result, users were unable to make calls, dictate texts, record audio, search the web with voice command, or use the advertised Google Assistant feature. On December 6, 2019, the court approved a $7.25 million settlement for the class that it deemed "excellent."

*In re Nexus 6P Products Liability Litigation*, No. 5:17-cv-02185-BLF (N.D. Cal.). Girard Sharp was appointed as co-lead counsel in a class action alleging that Nexus 6P smartphones suffer from a defect that renders the phones inoperable through an endless boot-loop cycle and an accelerated battery drain that causes the phones to shut off prematurely. On November 11, 2019, the Honorable Beth L. Freeman approved a $9.75 million class settlement, stating in part that "Class counsel has extensive experience representing plaintiffs and classes in complex litigation and consumer class actions. . . . [T]he quality of their work is reflected in the results achieved for the class." 2019 WL 6622842, at *10, *12 (N.D. Cal. Nov. 12, 2019).

*In re iPod Cases*, JCCP No. 4355 (Cal. Super. Ct. San Mateo Cty.). Girard Sharp, as court-appointed co-lead counsel, negotiated a settlement that provided warranty extensions, battery

replacements, cash payments, and store credits for class members who experienced battery failure. In approving the settlement, the Honorable Beth L. Freeman wrote that Girard Sharp attorneys are "extremely well qualified" and negotiated a "significant and substantial benefit" for the class.

*Sugarman v. Ducati North America, Inc.*, No. 5:10-cv-05246-JF (N.D. Cal.). The firm served as class counsel on behalf of owners of Ducati motorcycles whose fuel tanks degraded and deformed due to incompatibility with the motorcycles' fuel. In January 2012, the Honorable Jeremy D. Fogel approved a settlement that provided an extended warranty and repairs, commenting: "The Court recognizes that class counsel assumed substantial risks and burdens in this litigation. Representation was professional and competent; in the Court's opinion, counsel obtained an excellent result for the class." 2012 WL 113361, at *6 (N.D. Cal. Jan. 12, 2012).

*Parkinson v. Hyundai Motor America*, No. CV 8:06-0345 (C.D. Cal.). Girard Sharp served as class counsel in this class action involving allegations that the flywheel and clutch system in certain Hyundai vehicles was defective. After achieving nationwide class certification, Girard Sharp negotiated a settlement that provided from 50% to 100% in reimbursement to class members for their repairs, depending on their vehicle's mileage at the time of repair. The settlement also provided full reimbursement for rental car expenses for class members who rented a vehicle while flywheel or clutch repairs were being performed. After approving the settlement, the court wrote, "Perhaps the best barometer of . . . the benefit obtained for the class . . . is the perception of class members themselves. Counsel submitted dozens of letters from class members sharing their joy, appreciation, and relief that someone finally did something to help them." 796 F. Supp. 2d 1160, 1175 (C.D. Cal. 2010).

*In re Medtronic, Inc. Implantable Defibrillators Products Liability Litigation*, MDL No. 1726 (D. Minn.). Girard Sharp served on the discovery and law committees and performed briefing, discovery, and investigative work in this lawsuit that followed a February 2005 recall of certain models of Medtronic implantable cardioverter defibrillator devices. The controversy was resolved for $75 million.

*Browne v. American Honda Motor Co., Inc.*, No. CV 09-06750 (C.D. Cal.). Girard Sharp served as co-lead counsel representing plaintiffs who alleged that about 750,000 Honda Accord and Acura TSX vehicles had brake pads that wore out prematurely. Girard Sharp negotiated, and the court approved, a settlement valued at $25 million that provided reimbursements to class members and made improved brake pads available.

*In re General Motors Dex-Cool Cases*, No. HG03093843 (Cal. Super Ct. Alameda Cty.). These class actions alleged that General Motors' Dex-Cool engine coolant damaged certain vehicles' engines and formed a rusty sludge that caused vehicles to overheat. After consumer classes were certified in both Missouri and California, General Motors agreed to pay cash to class members nationwide. On October 27, 2008, the California court granted final approval of the settlement.

*Roy v. Hyundai Motor America*, No. SACV 05-483-AHS (C.D. Cal.). Girard Sharp served as court-appointed co-lead counsel in this nationwide class action alleging a defect in the air-bag system in Hyundai Elantra vehicles. Girard Sharp helped negotiate a settlement under which Hyundai agreed to repair the air-bag systems in the vehicles it sold and leased to class members. Hyundai also agreed to reimburse class members for transportation expenses and administer an

alternative dispute resolution program for trade-ins and buy-backs. In approving the settlement, the Honorable Alicemarie H. Stotler described the settlement as "pragmatic" and a "win-win" for all concerned.

## Other Consumer Protection Matters

*Larson v. John Hancock Life Insurance Company (U.S.A.)*, No. RG16813803 (Cal. Super. Ct. Alameda Cty.). Girard Sharp served as liaison counsel in this certified class action on behalf of universal life insurance policyholders alleging John Hancock overcharged more than 100,000 of its insureds, depriving them of the full value of the premiums they paid over time. On May 8, 2018, the Honorable Brad Seligman granted final approval of a $59 million settlement.

*In re America Online Spin-Off Accounts Litigation*, MDL No. 1581 (C.D. Cal.). Girard Sharp served as court-appointed co-lead counsel in this nationwide class action on behalf of America Online subscribers who were billed for a second account without their knowledge or consent. The litigation settled for $25 million and changes in AOL's billing and account practices.

*Mitchell v. American Fair Credit Association*, No. 785811-2 (Cal. Super. Ct. Alameda Cty.); *Mitchell v. Bankfirst, N.A.*, No. C-97-1421-MMC (N.D. Cal.). This class action was brought on behalf of California members of the American Fair Credit Association (AFCA). Plaintiffs alleged that AFCA operated an illegal credit repair scheme. The Honorable James Richman certified the class and appointed the firm as class counsel. In February 2003, the Honorable Ronald Sabraw of Alameda County Superior Court and the Honorable Maxine Chesney of the Northern District of California granted final approval of settlements valued at over $40 million.

*In re Mercedes-Benz Tele Aid Contract Litigation*, MDL No. 1914, CV No. 07-2720-DRD (D.N.J.). Girard Sharp served as co-lead class counsel on behalf of consumers whose vehicles' navigation systems were on the verge of becoming obsolete. Counsel obtained nationwide class certification before negotiating a settlement valued at up to $50 million. In approving the settlement, the court acknowledged that the case "involved years of difficult and hard-fought litigation by able counsel on both sides" and that "the attorneys who handled the case were particularly skilled by virtue of their ability and experience." 2011 WL 4020862, at *4, *8 (D.N.J. Sept. 9, 2011).

*In re LookSmart Litigation*, No. 02-407778 (Cal. Super. Ct. San Francisco Cty.). This nationwide class action was brought against LookSmart, Ltd. on behalf of consumers who paid an advertised "one time payment" to have their websites listed in LookSmart's directory, only to be charged additional fees to continue service. The court granted final approval of a class settlement valued at approximately $20 million that provided cash and other benefits.

*In re America Online, Inc. Version 5.0 Software Litigation*, MDL No. 1341 (S.D. Fla.). Girard Sharp served as co-lead counsel in this MDL involving 45 centralized actions. The case alleged violations of state consumer protection statutes, the Computer Fraud and Abuse Act, and federal antitrust laws arising from AOL's distribution of its Version 5.0 software upgrade. The Honorable Alan S. Gold granted final approval of a $15.5 million settlement.

*In re PayPal Litigation*, No. C-02-1227-JF (PVT) (N.D. Cal.). Girard Sharp served as co-lead counsel in this nationwide class action alleging violations of California consumer protection statutes and the Electronic Funds Transfer Act (EFTA). Plaintiffs alleged that PayPal unlawfully restricted access to consumers' PayPal accounts. On September 24, 2004, Judge Fogel granted final approval of a settlement valued at $14.35 million in cash and returned funds, plus injunctive relief to ensure compliance with the EFTA.

*Powers Law Offices, P.C. v. Cable & Wireless USA, Inc.*, No. 99-CV-12007-EFH (D. Mass). Girard Sharp prosecuted this class action on behalf of cable and wireless subscribers who were overcharged for recurring fees. The court granted final approval of an $8 million settlement, and the bankruptcy court approved a 30% distribution from the unsecured creditors' fund of bankruptcy liquidation proceeds.

*Lehman v. Blue Shield of California*, No. CGC-03-419349 (Cal. Super. Ct. San Francisco Cty.). In this class action charging Blue Shield with having illegally modified the risk-tier structure of its individual and family health care plans, Girard Sharp negotiated a $6.5 million settlement on behalf of current and former Blue Shield subscribers in California. The Honorable James L. Warren granted final approval of the settlement in March 2006.

*Telestar v. MCI, Inc.*, No. C-05-Civ-10672-JGK (S.D.N.Y). This class action was brought on behalf of MCI commercial subscribers who were charged both interstate and intrastate fees for the same frame relay on prorate line service during the same billing period. On April 17, 2008, the Honorable John G. Koeltl approved a favorable cash settlement.

*Wixon v. Wyndham Resort Development Corp.*, No. C-07-02361 JSW (BZ) (N.D. Cal.). Girard Sharp served as class and derivative counsel in this litigation against a timeshare developer and the directors of a timeshare corporation for violations of California law. Plaintiffs alleged that the defendants violated their fiduciary duties by taking actions for the financial benefit of the timeshare developer to the detriment of the owners of timeshare interests. On September 14, 2010, the district court approved a settlement of the derivative claims.

*Berrien v. New Raintree Resorts, LLC*, No. CV-10-03125 CW (N.D. Cal.); *Benedict v. Diamond Resorts Corporation*, No. CV 12-00183-DAE (D. Hawaii). Girard Sharp pursued these actions on behalf of timeshare owners, challenging the imposition of unauthorized "special assessment" fees. The court in each case approved a favorable settlement of the claims asserted on behalf of class members who were charged the fee.

*Allen Lund Co., Inc. v. AT&T Corporation*, No. C 98-1500-DDP (C.D. Cal.). This class action was brought on behalf of small businesses whose long-distance service was switched to Business Discount Plan, Inc. The Honorable Dean D. Pregerson appointed Girard Sharp as class counsel, and thereafter approved a settlement providing full cash refunds and free long-distance telephone service.

*Mackouse v. The Good Guys – California, Inc.*, No. 2002-049656 (Cal. Super Ct. Alameda Cty.). This nationwide class action against The Good Guys and its affiliates alleged violations of the Song-Beverly Consumer Warranty Act and other California consumer protection laws. Plaintiff alleged that The Good Guys failed to honor contracts that it offered for sale to customers in exchange for protection of a purchase after the manufacturer's warranty expired. On May 9, 2003, the Honorable

Ronald M. Sabraw granted final approval of a settlement providing cash refunds or services at a class member's election.

*In re H&R Block Express IRA Litigation*, MDL No. 1786 (W.D. Mo.). Girard Sharp served as co-lead counsel in this MDL involving H&R Block's marketing and sale of its "Express IRA" investment products. The firms negotiated a settlement in coordination with the New York Attorney General that delivered more than $19 million in cash to class members—resulting in a full recovery for consumers—as well as non-cash benefits entitling Express IRA holders to convert their investments to alternative IRAs with lower fees.

## Securities and Financial Fraud

*Daccache v. Raymond James Financial, Inc.*, No. 1:16-cb-21575-FAM (S.D. Fla.). Girard Sharp served as a member of the leadership team representing investors in various Jay Peak EB-5 Immigrant Investor Program project offerings. The investors' funds were diverted and misappropriated instead of being applied to the intended project to develop the area surrounding the Jay Peak Ski Resort. In June 2017, the court approved a settlement of $150 million for the investors.

*In re Oppenheimer Rochester Funds Group Securities Litigation*, No. 09-md-02063-JLK (D. Colo). Girard Sharp represented investors who were misled by the Oppenheimer California Municipal Bond Fund about the investment risks associated with the fund's holdings. On November 6, 2017, the Honorable John L. Kane approved a $50.75 million settlement for the investors.

*In re Sears Holdings Corporation Stockholder and Derivative Litigation*, Consolidated C.A. No. 11081-VCL (Del. Ch.). Girard Sharp served as co-lead counsel on behalf of the company in this derivative suit charging CEO and majority owner Edward S. Lampert and other directors with depriving stockholders of the full value of 266 of Sears Holdings' most valuable properties. Girard Sharp obtained a $40 million settlement for Sears Holdings Corporation in the Court of Chancery.

*In re Digex, Inc. Shareholder Litigation*, Consol. No. 18336 (Del. Ch.). Girard Sharp represented the Kansas Public Employees Retirement System, one of two institutional lead plaintiffs in this lawsuit; minority stockholders of Digex, Inc. sued to enjoin MCI WorldCom's planned acquisition of a controlling interest in Digex via a merger with Intermedia Communications, Inc. A settlement approved by the Delaware Chancery Court secured $165 million in MCI WorldCom stock and $15 million in cash for Digex shareholders, as well as non-cash benefits valued at $450 million.

*Billitteri v. Securities America, Inc.*, No. 3:09-cv-01568-F (N.D. Tex.). Girard Sharp served as lead counsel in an action against broker-dealer Securities America, Inc. and its corporate parent, Ameriprise, Inc. in connection with sales of investments in the Provident Royalties and Medical Capital investment schemes. Daniel Girard coordinated negotiations resulting in a $150 million settlement, with $80 million allocated to class plaintiffs represented by Girard Sharp and $70 million allocated to individual investors who had initiated arbitration proceedings. The settlements returned over 40% of investment losses.

*In re Lehman Brothers Equity/Debt Securities Litigation*, No. 08-Civ-5523 (S.D.N.Y.). Girard Sharp was appointed class counsel for a certified class of retail investors in structured products sold by UBS Financial Services, Inc., following the collapse of Lehman Brothers Holdings, Inc. in the largest bankruptcy in American history. The plaintiffs alleged that UBS misrepresented Lehman's financial condition and failed to disclose that the "principal protection" feature of many of the notes depended upon Lehman's solvency. Girard Sharp negotiated a settlement that established a $120 million fund to resolve these claims.

*In re Prison Realty Securities Litigation*, No. 3:99-0452 (M.D. Tenn.). Girard Sharp served as co- lead counsel in this securities class action brought against a real estate investment trust and its officers and directors relating to a merger between Corrections Corporation of America and CCA Prison Realty Trust. The court approved a settlement for over $120 million in cash and stock.

*In re American Express Financial Advisors Securities Litigation,* No. 04-cv-01773-DAB (S.D.N.Y.). Girard Sharp served as co-lead counsel in this class action on behalf of individuals who bought financial plans and invested in mutual funds from American Express Financial Advisors. The case alleged that American Express steered its clients into underperforming "shelf space funds" to reap kickbacks and other financial benefits. The court granted final approval of a settlement providing $100 million in cash and other relief.

*Scheiner v. i2 Technologies, Inc.*, No. 3:01-CV-418-H (N.D. Tex.). Girard Sharp represented the lead plaintiff—the Kansas Public Employees Retirement System—and served as co-lead counsel on behalf of investors in i2 Technologies. The Honorable Barefoot Sanders approved cash settlements for $88 million from the company, its officers, and its former auditor Arthur Andersen. As part of the settlement, i2 agreed to significant corporate governance reforms.

*In re Peregrine Financial Group Customer Litigation*, No. 1:12-cv-5546 (N.D. Ill.). As one of two co-lead counsel, Girard Sharp prosecuted this litigation under the Commodities Exchange Act and state law on behalf of investors who lost millions in the collapse of a commodities futures merchant. The litigation generated recoveries of more than $75 million. The court wrote that counsel "conferred an impressive monetary benefit on the Settlement Class: the funds recovered from U.S. Bank are substantial—both in absolute terms and when assessed in light of the risks of establishing liability and damages" [ECF No. 441].

*CalSTRS v. Qwest Communications*, No. 415546 (Cal. Super. Ct. S.F. Cty.). Girard Sharp represented the California State Teachers Retirement System in this opt-out securities fraud case against Qwest Communications, Inc. and certain of its officers and directors, as well as its outside auditor Arthur Andersen. The case resulted in a precedent-setting $45 million settlement for California schoolteachers.

*In re SLM Corp. Securities Litigation*, No. 08-Civ-1029-WHP (S.D.N.Y). Girard Sharp served as lead counsel representing investors of SLM Corporation who alleged Sallie Mae, the leading provider of student loans in the United States, misled the public about its financial performance in order to inflate the company's stock price. After achieving nationwide class certification, Girard Sharp negotiated a settlement that established a $35 million fund to resolve the investors' claims.

*In re Winstar Communications Securities Litigation*, No. 01 Civ. 11522 (S.D.N.Y.). Girard Sharp represented Allianz of America, Inc., Fireman's Fund and other large private institutional investors against Grant Thornton and other defendants on claims arising out of plaintiffs' investments in Winstar Communications, Inc. The firm achieved a settlement on the eve of trial that provided a recovery rate over 30 times higher than what class members received in a related class action. After deduction of attorneys' fees, the fund returned 78.5% of potentially recoverable losses.

*In re Oxford Tax Exempt Fund Securities Litigation*, No. WMN-95-3643 (D. Md.). Girard Sharp served as co-lead counsel in class and derivative litigation brought on behalf of a real estate limited partnership with assets of over $200 million. The parties reached a settlement providing for exempt issuance of securities under section 3(a)(10) of the Securities Act of 1933, public listing of units, and additional benefits valued at over $10 million.

*Calliott v. HFS, Inc.*, No. 3:97-CV-0924-L (N.D. Tex.). Girard Sharp intervened on behalf of an institutional client in this securities class action arising out of the bankruptcy of Amre, Inc., a seller of home remodeling and repair services. After being designated lead counsel under the Private Securities Litigation Reform Act, Girard Sharp negotiated and obtained court approval of settlements totaling $7.3 million.

*In re Towers Financial Corporation Noteholders Litigation*, MDL No. 994 (S.D.N.Y.). This class action was brought against promoters and professionals linked to a failed investment scheme that the SEC described at the time as being the "largest Ponzi scheme in U.S. history." The case resulted in $6 million in partial settlements and a $250 million judgment entered against four senior Towers executives. Girard Sharp served as liaison counsel and as a Plaintiffs' Executive Committee member. The court stated that "class counsel—particularly plaintiffs' liaison counsel, Daniel Girard—has represented the plaintiffs diligently and ably in the several years that this litigation has been before me." 177 F.R.D. 167, 171 (S.D.N.Y. 1997).

## Mass Tort

*In re USC Student Health Center Litigation,* No. 2:18-cv-04258-SVW-GJS (C.D. Cal.). Girard Sharp served as co-lead counsel for a class of women who alleged they were sexually assaulted or molested by a USC gynecologist. The court in February 2020 approved a settlement for $215 million that also secured comprehensive injunctive relief at the university.

*In re Actos (Pioglitazone) Products Liability Litigation*, MDL No. 2299 (W.D. La.). Girard Sharp lawyers were appointed to the Plaintiffs' Steering Committee and served on the *Daubert* and Legal Briefing Committees in this MDL. A $2.37 billion global settlement was achieved.

*In re Yasmin and Yaz (Drospirenone) Marketing, Sales, Practices and Products Liability Litigation*, MDL No. 2385 (S.D. Ill.). Girard Sharp lawyers were appointed to the Plaintiffs' Steering Committee and served as Co-Chair of the Plaintiffs' Law and Briefing Committee in this MDL that produced settlements worth approximately $1.6 billion.

*In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, MDL No. 2385 (S.D. Ill.). Girard Sharp lawyers were appointed to the Plaintiffs' Steering Committee in mass tort litigation

that culminated in settlements worth approximately $650 million.

## Antitrust

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.). The firm served as liaison counsel for the direct purchaser plaintiffs and certified direct purchaser class in this multidistrict antitrust litigation against makers of LCD screens alleging a far-reaching conspiracy to raise, fix and maintain prices. The direct purchasers achieved settlements of more than $400 million.

*In re Lidoderm Antitrust Litigation*, No. 14-md-02521 (N.D. Cal.). Girard Sharp lawyers were appointed co-lead counsel in a class action on behalf of end-purchasers of the prescription drug Lidoderm who alleged that two drug companies, Endo Pharmaceuticals and Teikoku Pharma, unlawfully paid a third, Watson Pharmaceuticals, to delay the launch of more affordable generic Lidocaine patches. The firm secured a $104.75 million settlement on the eve of trial.

*In re Aggrenox Antitrust Litigation*, No. 14-md-2516 (D. Conn.). Girard Sharp served on the Plaintiffs' Executive Committee in this "pay-for-delay" litigation accusing Teva Pharmaceuticals USA, Inc. and Boehringer Ingelheim Pharmaceuticals, Inc. of illegally agreeing to keep generic Aggrenox off the market. The case settled for $54 million.

*In re Solodyn Antitrust Litigation,* No. 14-md-2503 (D. Mass.). The firm served on the Plaintiffs' Executive Committee in this action alleging that Medicis Pharmaceuticals and several generic drug manufacturers conspired to monopolize the market for the acne drug Solodyn. The case settled for over $40 million in cash.

*In re Natural Gas Antitrust Cases I, II, III and IV*, J.C.C.P. No. 4221 (Cal. Super. Ct. San Diego Cty.). Girard Sharp served on the leadership team in coordinated antitrust litigation against numerous natural gas companies for manipulating the California natural gas market. The firm helped achieve settlements of nearly $160 million.

## Government Reform

*Paeste v. Government of Guam*, No. 11-cv-0008 (D. Guam) (Marshall, J.). Girard Sharp and co-counsel served as class counsel in litigation against the Government of Guam on behalf of Guam taxpayers for chronic late payment of income tax refunds. After obtaining certification of a litigation class, the plaintiffs prevailed at summary judgment and obtained a permanent injunction reforming Guam's administration of tax refunds. The Ninth Circuit affirmed the injunction. 798 F.3d 1228 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 2508 (2016).

*Ho v. San Francisco Unified School District*, No. C-94-2418-WHO (N.D. Cal.). This civil rights action was brought on behalf of a certified class of San Francisco public school students of Chinese descent to terminate racial and ethnic quotas imposed under a 1983 desegregation consent decree. *See Ho v. San Francisco Unified Sch. Dist.*, 965 F. Supp. 1316 (N.D. Cal. 1997), *aff'd*, 147 F.3d 854 (9th Cir. 1998); *see also* 143 Cong. Rec. S6097, 6099 (1997) (statement of Senator Hatch noting testimony of a class representative before the Senate Judiciary Committee).